DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant appeals the decision of the Medina County Court of Common Pleas finding him guilty of possession of marijuana and sentencing him to eight years in prison. This Court affirms.
 {¶ 2} On January 16, 2005, around eleven o'clock in the morning, Defendant was driving northbound on Interstate 71 in a rented Dodge Dakota pickup truck with Texas license plates. Shortly after Defendant passed the exit for Route 83, Trooper Timberlake of the Ohio State Highway Patrol observed the silver pickup's speed decrease suddenly. As the truck passed, Trooper Timberlake saw the driver push himself off of the steering wheel and back into his seat so that he would be behind the door post and not visible to Trooper Timberlake. This aroused Trooper Timberlake's suspicion, and he pulled out and began to follow Defendant. For approximately a mile, Defendant was following a semi-truck too closely in the right-hand lane, which amounted to a violation for not maintaining an assured clear distance ahead.
 {¶ 3} Trooper Timberlake executed a stop and approached Defendant's truck on the passenger side. He saw four spare tires on rims in the back of the truck, and noted that they were much older than the late-model truck, were very dirty, and would probably not fit the truck. He saw that Defendant was on his cell phone, but Defendant hung up the phone as Trooper Timberlake approached the truck. When Trooper Timberlake requested Defendant's license and registration, Defendant gave him a Mexican ID card with the name Ricardo Morales Almazan, and a rental agreement for the pickup truck.
 {¶ 4} Defendant explained to Trooper Timberlake that he had driven from Austin, Texas. When Trooper Timberlake asked where he was going, he said that he was going to get gas. Trooper Timberlake explained that he had just passed three gas stations at the exit about a mile back. Defendant said he was going to stop at the next exit. Once again, Trooper Timberlake asked him where he was going, and Defendant reiterated that he was going to get gas. Trooper Timberlake then asked whether Defendant had driven clear to Ohio from Texas to get gas. Defendant laughed and said no. This entire conversation, including the last exchange that Defendant clearly understood to be a joke, was in English. At no point did Trooper Timberlake have any difficulty understanding or communicating with Defendant.
 {¶ 5} At this point, Defendant became very evasive. To answer Trooper Timberlake's question about where he was going, Defendant began looking around for highway signs and eventually answered that he was going to Akron on I-77. Trooper Timberlake explained that he was on I-71, not I-77. Defendant grabbed the gear shift and said he would turn around. Trooper Timberlake told him to wait, and gave him directions to get to Akron on I-76. He then continued to ask questions of Defendant. Eventually, Defendant said that he was going to visit his father, and was taking the four spare tires in the truck bed to give to his father.
 {¶ 6} Next, Trooper Timberlake began to inquire about the rental agreement on the pickup truck that Defendant had given him. He had noticed that the truck had been rented in Austin, Texas, less than twenty-four hours before this stop. It was clear to Trooper Timberlake that Defendant had driven non-stop from Texas, a state known to the troopers to be a source point for drugs. He also noted that, according to the rental agreement, the truck was not supposed to leave Texas, and that Defendant appeared nowhere on the agreement as an authorized driver. The authorized driver on the agreement was Arthur Cartello. Defendant said that his uncle had rented the truck for him, but could not give the name of his uncle as it appeared on the agreement. After unsuccessfully attempting to take the agreement from Trooper Timberlake to look at the name, Defendant said that his uncle's name was Trudy.
 {¶ 7} In addition to all of the ways in which Defendant was being evasive, Trooper Timberlake saw clear and extreme signs of nervousness. Defendant refused at all times to make eye contact, and Trooper Timberlake could see his pulse throbbing in his neck. Trooper Timberlake returned to his car to radio for assistance, and Trooper Daley responded. When Trooper Daley arrived, he removed Defendant from the truck and placed him in the cruiser.
 {¶ 8} As Trooper Timberlake later testified at Defendant's trial, the Ohio State Highway Patrol was aware of incidents in which drug couriers would drive from Texas carrying tires that were packed with illegal drugs. Having assessed the situation, Trooper Timberlake, who was trained to handle a drug-sniffing canine and had done so for six years, removed his dog Cindy from his patrol car so that she could conduct a sniff of Defendant's truck. Cindy alerted at the driver's side door of the truck, and began to scratch the door. The troopers asked Defendant whether they could search the truck, and he told them to go ahead and search the whole thing. No more than ten minutes had elapsed from the time Trooper Timberlake pulled Defendant over and when Cindy sniffed the truck.
 {¶ 9} Trooper Timberlake began with the bed of the truck, and lifted one of the tires out. He noted that it was extremely heavy, and asked Trooper Daley to take a look. Trooper Daley concurred, and they decided that Trooper Timberlake would take the tire to Bear's Towing off of I-71, just a mile and a half south of where they had stopped Defendant, while Trooper Daley waited at the scene with Defendant. Before they did so, Trooper Timberlake placed Defendant under arrest and attempted to administer his Miranda warnings, but Defendant professed that he no longer spoke English. Trooper Timberlake contacted Trooper Pagan on a cell phone, and Trooper Pagan, whose spoke Spanish fluently, administered the Miranda warnings to Defendant.
 {¶ 10} When Bear's Towing dismantled the tire that Trooper Timberlake brought, they found two half-moon shaped tubes welded to the inside of the wheel rim and capped with metal caps. Upon drilling into one of the tubes, Trooper Timberlake discovered that the drill bit was covered with what appeared to be marijuana. The pickup truck was towed to Bear's Towing, and the rest of the tires were dismantled. After four hours, the troopers had found a total of approximately eighty-eight pounds of marijuana. Each tire had the same type of tubes welded to the inside of the rim which were packed with bundles of marijuana.
 {¶ 11} During the trial, the above testimony was produced, and the jury was shown the marijuana and the tire rims, among other things. A forensic scientist testified that he had examined the substance found in the tire rims and that it was in fact marijuana, totaling 89.89 pounds (40,775.61 grams). During a break in the trial, when the evidence was being brought in from a trooper's car, Defendant was in a holding room with a Medina County Sheriff's Deputy. According to the deputy, Defendant looked at the evidence as it passed the room and said (in English), "Where's the rest of the dope?" When the deputy asked what he was talking about, Defendant said, "You'll see when it gets here." The deputy testified to this exchange at the trial. The jury found Defendant guilty of possession of marijuana, and the judge sentenced him to eight years in prison.
 {¶ 12} Defendant now raises four assignments of error. We will deal with them in a different order, for ease of discussion.
 FIRST ASSIGNMENT OF ERROR
"The trial court erred by denying Appellant's motion to suppress evidence obtained in violation of the Fourth Amendment, where the state failed to establish that the drug-sniffing canine was trained and reliable at the suppression hearing."
 {¶ 13} Defendant contends that the State failed to prove that Trooper Timberlake's drug-sniffing dog Cindy was trained and reliable, and that therefore the trial court should have granted Defendant's motion to suppress the marijuana found in the tires.
 {¶ 14} A motion to suppress evidence under the Fourth Amendment involves mixed questions of law and fact. Ornelas v.United States (1996), 517 U.S. 690, 696-97; State v. Booth,151 Ohio App.3d 635, 2003-Ohio-829, at ¶ 12. Therefore, this Court grants deference to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. Id.
 {¶ 15} This court has previously held that "if the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Carlson (1995),102 Ohio App.3d 585, 593. Once the occupants of the vehicle are lawfully detained, "an officer does not need a reasonable suspicion of drug-related activity to conduct a dog sniff of the vehicle." Id. at 594. In State v. Nguyen, the court engaged in an extensive discussion of the use of drug-sniffing dogs and their reliability. State v. Nguyen, 157 Ohio App.3d 482,2004-Ohio-2879. The court said that "when a dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle." Id. at ¶ 22, citing State v.Bolding (May 28, 1999), 6th Dist. No. E-97-115.
 {¶ 16} The Nguyen court looked carefully at the requirements for demonstrating that a particular drug-sniffing dog is reliable, and at the question of whether that dog's records in the field are necessary to support the contention that the dog is trained and reliable. Nguyen, at ¶ 57-62. It concluded that such records are not required. Id. at ¶ 62. The court found the fact that the dog and its handler were trained and certified on the day the search took place sufficient to support the handler's claim that the dog was reliable. Id. In addition, although the handler was unable to cite the number of times that the dog had alerted and had not found drugs, the court held that such a number was immaterial to the dog's reliability. Id. at ¶ 59.
 {¶ 17} This district has also dealt with the reliability of drug-sniffing dogs, and has come to a similar conclusion. InState v. Calhoun, a canine handler testified to his training and to the dog's training, as well as to the number of years the team had worked together. State v. Calhoun (May 3, 1995), 9th Dist. No. 94CA005824. At no point did the defendant in Calhoun
challenge the testimony that the handler gave. Id. The trial court held that the dog was sufficiently reliable, and this court affirmed the lower court's finding. Id.
 {¶ 18} At no point during the suppression hearing in this case did Defendant attempt to challenge the training or certification of Cindy. Although Defendant did ask whether Cindy had ever alerted when no drugs were found, Trooper Timberlake explained that, while that had happened, it was attributable to the fact that the dogs are trained to detect an odor, and that odor may linger after the drugs are gone. The trial court found the explanation to be sufficient, and denied Defendant's motion to suppress. We agree with the trial court's determination that Trooper Timberlake's testimony as to Cindy's training as well as his explanation of the dog's alerting when drugs might not be present were sufficient to establish that Cindy was trained and reliable.
 THIRD ASSIGNMENT OF ERROR
"There was insufficient evidence to support the jury's guilty verdict, and [Defendant's] possession of drugs (marijuana) conviction was against the manifest weight of the evidence."
 {¶ 19} Defendant argues that there was insufficient evidence to support the jury's verdict, and that the verdict was against the manifest weight of the evidence. In addition, Defendant has included in his assignment of error the argument that the State failed to establish venue in its case in chief.
 {¶ 20} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988),51 Ohio App.3d 215, 216, citing State v. Bridgeman (1978),55 Ohio St.2d 261. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386.
 {¶ 21} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts, (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 22} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 23} In the instant case, Defendant was charged with possession of marijuana, in violation of RC 2925.11(C)(3)(f). The statute reads, in pertinent part, as follows:
"(A) No person shall knowingly obtain, possess, or use a controlled substance. * * *
"(C) Whoever violates division (A) of this section is guilty of one of the following:
"* * * (3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:
"* * * (f) If the amount of the drug involved equals or exceeds twenty thousand grams, possession of marihuana is a felony of the second degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the second degree."
In order to prove its case, the State needed to prove that Defendant either obtained or possessed or used a controlled substance knowingly. The statute defines knowingly at RC2901.22(B) as follows:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 24} The State produced evidence at trial that Defendant had driven through the night from Texas in a rented pickup truck he was not authorized to drive, and which should never have left Texas according to the rental agreement. He did not even know who had rented the truck. He had arrived in Medina County with no clear idea of where he was going. In fact, he told Trooper Timberlake that he had to ask for directions once he was near Akron, which he claimed (after some evasion) was his final destination. Trooper Timberlake, an Ohio State Highway Patrolman for thirteen years, knew that this was a suspicious story and that Defendant showed signs of being a drug courier, since he had come from Texas and was not sure where he was going in Ohio. In addition, Trooper Timberlake was able to testify to the extreme nervousness of Defendant, including his refusal to make eye contact, the fact that Trooper Timberlake could see the pulse throbbing in Defendant's neck, and the fact that Defendant attempted to pull away before Trooper Timberlake had released him.
 {¶ 25} The State also produced evidence of the drug dog sniff of the vehicle, and the fact that Cindy alerted at the vehicle. It demonstrated how Trooper Timberlake found the marijuana in the tires, and how Trooper Timberlake knew to look at the tires, which, in his experience with the Ohio State Highway Patrol, were often used to transport and conceal drugs. The State produced a forensic scientist, who testified that he had tested the material found in the tires and it was in fact marijuana. He also testified that it weighed more than twice the minimum amount for a second degree felony, under RC 2925.11(C)(3)(f). Finally, the State produced the testimony of Deputy Cornelius, to whom Defendant made statements about the amount of "dope" that was being wheeled into the courtroom, and how there had been more than that found.
 {¶ 26} As to the issue of venue, the State did provide evidence of the county in which Trooper Timberlake's stop took place. In its initial questioning of Trooper Timberlake on direct examination, the State asked where he was working on the night in question. He responded that he was stationed at Milepost 204 on I-71, just south of Route 83. He indicated that this was in Harrisville Township in Medina County. The State confirmed that he was talking about Medina County, and the Trooper indicated that he was. We find that this was sufficient to establish the venue of the stop as having been in Medina County.
 {¶ 27} Given all of the evidence before it, we are persuaded that the trier of fact did not lose its way in finding Defendant guilty of possession of drugs. Defendant's conviction is supported by sufficient evidence, both direct and circumstantial, for the jury to conclude that Defendant knowingly had possession of the marijuana found in the truck. Therefore, we hold that the jury was not unreasonable in concluding that, based on all of the evidence, Defendant possessed marijuana in satisfaction of the statutory elements. Defendant's third assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court abused its discretion and erred to the prejudice of [Defendant] by allowing the state to introduce, over defense objection, irrelevant, unfairly prejudicial and misleading testimony by a sheriff's deputy, concerning comments which he allegedly overheard [Defendant] make during a break in the trial about the amount of marijuana transported to court for introduction by the prosecution as State's Exhibits 19-21."
 FOURTH ASSIGNMENT OF ERROR
"The mandatory maximum prison sentence of eight years, which the trial court was required to impose on [Defendant] pursuant to R.C. 2925.11(C)(3)(f), for the non-violent, victimless offense of possession of marijuana violates the federal and state constitutional prohibitions against cruel and unusual punishment."
 {¶ 28} Because Defendant's second and fourth assignments of error are identical in their analysis, we will deal with them together. In his second assignment of error, Defendant claims that the admission of the testimony of the sheriff's deputy was prejudicial and amounted to an abuse of discretion by the trial court. He argues that the trial court's admission of this evidence violated Evid.R. 401, 402 and 403, because it was irrelevant and unfairly prejudicial. In his fourth assignment of error, Defendant argues that the mandatory sentence imposed by the trial court is a violation of the state and federal prohibitions against cruel and unusual punishment. We find that Defendant has waived both of these assignments of error by not raising them at the trial level.
 {¶ 29} An appellate court will not consider as error any issue that a party was aware of but failed to bring to the attention of the trial court. State v. Dent, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 6. Failure to timely object waives the opportunity for appellate review of any issue not preserved and, accordingly, such issue need not be considered for the first time on appeal. State v. Self (1990), 56 Ohio St.3d 73, 81;State v. Heilman (Sept. 21, 1994), 9th Dist. No. 2312-M, at 3;State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 30} After a thorough review of the record, we find that Defendant's trial counsel never objected to the testimony of Deputy Cornelius. The record of the voir dire of the deputy reflects that Defendant's counsel never objected to the deputy's testimony or asked the deputy any questions. When Deputy Cornelius took the stand during the trial, Defendant's counsel objected twice to specific questions, apparently on the grounds that they elicited hearsay responses. However, he never attempted to object to the fact that the deputy's testimony was irrelevant or unfairly prejudicial, and never asked the court to strike the testimony. We also find that Defendant failed to object to the sentence imposed by the trial court, even though the trial court gave him the opportunity to do so. Defendant's second and fourth assignments of error were therefore waived.
 {¶ 31} We overrule Defendant's first and third assignments of error, and find that his second and fourth assignments of error were waived. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J. Concurs.
Carr, J. Concurs in judgment only.