[Cite as *State v. Reid*, 2013-Ohio-4274.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellant

    v.

LIGEIA C. REID

    Appellee

C.A. No.     12CA010265

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CR080287

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

CARR, Judge.

{¶1} Appellant, the State of Ohio, appeals the judgment of the Lorain County Court of Common Pleas granting the motion to suppress filed by appellee, Ligeia Reid. This Court reverses and remands.

I.

{¶2} This matter arises from a traffic stop on the Ohio Turnpike that occurred on January 5, 2010. On May 5, 2010, the Lorain County Grand Jury indicted Reid on one count of possession of drugs, a felony of the first degree, along with a major drug offender specification; one count of possession of drug paraphernalia, a misdemeanor of the fourth degree; and one count of possession of drugs, a minor misdemeanor. On July 28, 2010, the grand jury returned a supplemental indictment charging Reid with an additional count of possession of drugs, a felony of the second degree.

{¶3} On December 28, 2010, Reid filed a motion to suppress alleging that law enforcement had no basis to stop her vehicle. After a hearing, the trial court denied the motion on July 26, 2011. After several continuances, Reid filed a second motion to suppress challenging the search of her vehicle. The State filed a brief in opposition to the motion, and the trial court held a hearing on the matter. The trial court issued a journal entry granting the motion on July 30, 2012.

{¶4} The State filed a notice of appeal on August 1, 2012. On appeal, the State raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING MS. REID'S MOTION TO SUPPRESS AS THE EVIDENCE RECOVERED FROM HER VEHICLE WAS OBTAINED THROUGH A LEGAL SEARCH.

{¶5} In its first assignment of error, the State contends that the trial court erred in granting Reid's motion to suppress. This Court agrees.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. The reviewing court must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

**{¶7}** In order to initiate a valid traffic stop, an officer must have a "reasonable suspicion that a motorist was violating a traffic law." *State v. Poole*, 9th Dist. Medina No. 2336-M, 1995 WL 338477 (June 7, 1995). "[A]ny violation of a traffic law gives rise to a reasonable suspicion to make an investigatory stop of a vehicle." *State v. Johnson*, 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11, citing *Whren v. United States*, 517 U.S. 806 (1996).

**{¶8}** In *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), the United States Supreme Court addressed the specific question of "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." The Supreme Court held that "the use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that otherwise would remain hidden from public view,'- during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Caballes*, 543 U.S. at 409. Thus, when a valid traffic stop has been initiated, an exterior dog sniff does not constitute a search within the meaning of the Fourth Amendment. *Id*., *see also State v. Shook*, 9th Dist. Lorain No. 93CA005716, 1994 WL 263194 (June 15, 1994), citing *United States v. Place*, 462 U.S. 696, 707 (1983). If a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop, a law enforcement official may simultaneously conduct a K-9 sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity. *State v. Carlson*, 102 Ohio App.3d 585, 594 (9th Dist.1995). "[O]nce a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Carlson*, 102 Ohio App.3d at 600. *See also State v. Barbee*, 9th Dist. Lorain No. 07CA009183, 2008-Ohio-3587, ¶ 21 (Because the drug-detection dog was properly trained, "his alert [gave] the troopers probable cause to search the vehicle."

{¶9}    This Court has held that "when a dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle." *State v. Almazan*, 9th Dist. Medina No. 05CA0098-M, 2006-Ohio-5047, ¶ 15, citing *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2979, ¶ 22 (6th Dist.).  More recently, this Court held that "[i]f an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle." *State v. Nocon*, 9th Dist. Lorain No. 10CA009921, 2012-Ohio-395, ¶ 12.  In discussing the unique circumstances of a dog sniff, this Court noted that "[s]uch a dog is trained to pick up the scent of narcotics and, hopefully, lead the handler directly to the source of the scent. However, many factors may prevent the dog from getting to that source.  Therefore, the only practical rule is to permit a thorough search of the vehicle." *Id.*, quoting *State v. Bolding*, 6th Dist. No. E-97-115, 1999 WL 334494 (May 28, 1999).  The United States Supreme Court has held that, "The legitimate expectation that information about perfectly lawful activity [inside a home] will remain private is categorically distinguishable from [defendant's] hopes or expectations concerning the nondetection of contraband in the trunk of his car.  A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. at 410.

{¶10} This Court recently discussed the scope of a search under the automobile exception in *State v. Carmichael*, 9th Dist. Lorain No. 11CA010086, 2012-Ohio-5923, ¶ 9, and stated:

> Under the automobile exception, where an officer has probable cause to believe there is contraband in a car that has been stopped, "a search may extend to the entire car, including the trunk." *State v. Grant*, 9th Dist. Medina No. 06CA0019-M, 2007-Ohio-680, ¶ 13, citing *United States v. Ross*, 456 U.S. 798, 824 (1982). The evidence simply must be such that "there is a 'fair probability that contraband or evidence of a crime will be found in [the trunk].'" *Grant* at ¶ 13, quoting

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). Once such probable cause exists, the police are free to search the trunk "and its contents, including all moveable containers and packages, that may logically conceal the object of the search." *State v. Welch*, 18 Ohio St.3d 88 (1985), syllabus. The search extends to any "passengers' belongings found in the car that are capable of concealing the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999).

**{¶11}** The scope of a warrantless search of an automobile based upon probable cause may be limited in some circumstances. "After an officer has probable cause to believe that a vehicle contains contraband, a permissible search of the vehicle is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 17, citing *Ross*, 456 U.S. at 824. Under circumstances where an officer smelled the odor of burnt marijuana in the passenger compartment of a vehicle, for example, the Ohio Supreme Court held that the officer's detection of burnt marijuana, standing alone, did not establish probable cause for a warrantless search of the trunk of a vehicle. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 52.[1] "This proposition is established by the common sense observation that an odor of *burning* marijuana [in the passenger compartment] would not create an inference that burning marijuana was located in a *trunk*." (emphasis added) *Gonzales* at ¶ 21. However, if an officer detects a strong odor of raw marijuana, but no large amount is found within the passenger compartment of the vehicle, the officer has probable cause to search the trunk. *Gonzales* at ¶ 22. Hence, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every

---

[1] The Ohio Supreme Court's decision in *Farris* involved an officer detecting the smell of burnt marijuana inside the passenger compartment of a vehicle. *Farris* is not controlling under the circumstances of this case where a dog specifically trained in narcotics detection alerted to the presence of drugs inside the vehicle. We note that the specific issue of whether a search subsequent to an alert by a dog trained in narcotics detection is limited to certain portions of the vehicle remains ripe for consideration by the Supreme Court.

part of the vehicle and its contents that may conceal the object of the search." *Ross,* 456 U.S. at 825.

{¶12} Moreover, in reaching its ultimate conclusion in *Farris*, the Ohio Supreme Court relied on the Tenth Circuit's decision in *United States v. Nielsen*, 9 F.3d 1487 (10th Cir.1993). *Nielsen*, like *Farris*, involved a scenario where a police officer smelled the odor of burnt marijuana emanating from a vehicle. While the court concluded a human's detection of burnt marijuana did not establish probable cause to search the trunk absent further corroboration, it specifically contrasted that scenario from a dog alert, stating, "If this were a case of an alert by a trained drug sniffing dog with a good record, we would not require corroboration to establish probable cause [to search the trunk]." *Nielsen* at 1491. In noting that a positive alert by a drug sniffing dog would be sufficient to establish probable cause, the court continued, "The dog would have no reason to make a false alert. But for a human sniffer, an officer with an incentive to find evidence of illegal activities and to justify his actions when he had searched without consent, we believe constitutional rights are endangered if limitations are not imposed." *Id*. Thus, the court drew a sharp distinction between a positive alert by a drug sniffing dog that is trained to detect the presence of any number of narcotics, and a human's detection of burnt marijuana, as was the case in both *Nielsen* and *Farris*.

{¶13} Furthermore, with respect to the heightened reliability of a drug sniffing dog, the United States Supreme Court recently cautioned against demeaning the value of a dog sniff by placing undue emphasis on a drug dog's field performance records when, in most cases, they have relatively limited import. *Florida v. Harris*, 133 S.Ct. 1050, 1056 (2013). In reaching this conclusion, the Supreme Court stated, "If a dog on patrol fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate the search. Field data

thus may not capture a dog's false negatives. Conversely, * * * if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances there were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives." *Id.*

{¶14} In her motion to suppress, Reid argued that all of the evidence seized during the traffic stop was obtained due to an unreliable dog sniff that violated her rights pursuant to the Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution. Specifically, Reid contended that the drug dog alerted to the driver's side door only after "tremendous prompting by its handler." Reid further asserted that once the officer searched the passenger compartment of the vehicle and did not find drugs, he did not have probable cause to search the trunk of the vehicle.

{¶15} Sergeant Joel Smith of the State Highway Patrol testified on behalf of the State at the suppression hearing. From 2008 to 2011, Sgt. Smith worked in the patrol division with his K-9 partner, Diego. The parties stipulated to Diego's training records, which were admitted as an exhibit at the hearing, and Sgt. Smith testified that Diego is trained to detect marijuana, cocaine, methamphetamine, ecstasy, and heroin. Sgt. Smith further testified that Diego was trained to alert to the odor of one of those drugs by sitting down.

{¶16} On January 5, 2010, Sgt. Smith was patrolling the Ohio Turnpike in Amherst when he observed a vehicle traveling in excess of the posted speed limit. The blustery weather conditions that day included snow and heavy winds. The Dodge Charger, driven by Reid, was traveling at 72 miles per hour in a 65 miles-per-hour zone. Reid was traveling from her home in Michigan and driving a rental car. After Sgt. Smith initiated the traffic stop, Reid stated that she

was going to visit family in Cleveland, but she did not know exactly where her family was located. Sgt. Smith testified, "She had to wait until she got off on that exit, then she was supposed to make a phone call and she'd get directions from there." Just minutes after Sgt. Smith initiated the stop of Reid's vehicle, Trooper Beale pulled up from behind and offered assistance. Trooper Beale had observed the stop of Reid's vehicle as he concluded another traffic stop nearby. Sgt. Smith informed Reid that Trooper Beale was going to run her license and check her rental car papers, while he walked Diego around the outside of the vehicle.

{¶17} Sgt. Smith removed Diego from the cruiser and approached Reid's vehicle. Reid, who remained in the vehicle during the dog sniff, was instructed to roll up her window and turn the car off. After giving the command to search for narcotics, Sgt. Smith walked Diego around the vehicle several times. A dashboard camera video of the traffic stop was played at the hearing. The video showed that after the dog initially ran from behind Reid's vehicle to the passenger side of the vehicle, Sgt. Smith made two complete circles of the vehicle with Diego, with each tour beginning at the rear of the vehicle. It was also evident from the video that the weather conditions were snowy and windy at time of the dog sniff. Sgt. Smith testified that Diego alerted twice to the driver's side door. Reid was informed that the dog alerted to the odor of narcotics and she was placed in the police cruiser. Sgt. Smith then searched the passenger compartment and the trunk of the vehicle. While he did not find anything in the passenger compartment, in the trunk, Sgt. Smith found "a Coach purse that contained -- I think it was like 14 grams of marijuana and 200 and some grams of cocaine." Sgt. Smith explained that the purse was the only item found in the trunk.

{¶18} After Sgt. Smith informed Reid about her *Miranda* rights, Sgt. Smith commenced an interrogation. Reid had initially stated that she had nothing in the trunk, and that she had

never opened the trunk. Sgt. Smith testified that when he drove Reid to the Oberlin Municipal Court to file the charges, he asked Reid if the purse in the trunk was "a real Gucci purse or is it a fake Gucci purse?" Reid responded by asking, "what does that have to do with anything?" Sgt. Smith then stated he was wondering about the price of the purse for inventory purposes. Reid responded, "it's real. And it's not Gucci. It's Coach." Sgt. Smith then asked, "I thought you didn't know that there was anything back in that trunk?" Sgt. Smith testified that after pausing for a moment, Reid responded, "everything that's back there is all mine. I smoke marijuana every day and I smoke crack every now and again."

{¶19} When asked on cross-examination if he searched the passenger compartment first because that was where Diego had alerted, Sgt. Smith responded in the negative, and stated, "It's just a systematic search where we always – we start in the front passenger compartment and work our way back." Sgt. Smith also testified that while passengers are typically removed from the car prior to a dog sniff, it is sometimes done with the passenger inside the vehicle. Sgt. Smith clarified that if a passenger has the odor of drugs on her person, and she is removed from the vehicle, the odor will not dissipate as soon as the door is opened and the passenger is removed. On redirect examination, Sgt. Smith testified that it was windy on the date of the incident, and that windy conditions can impact the drug dog's ability to detect odors, as well as determine the location of the source of the odor. On recross-examination, defense counsel asked whether the presence of drugs in the trunk would result in a stronger odor of drugs coming from the trunk. Sgt. Smith responded that was not necessarily accurate.

{¶20} Prior to issuing its journal entry granting Reid's motion, the trial court gathered the parties on July 27, 2012, to discuss its factual findings on the record. During cross-examination, defense counsel had questioned Sgt. Smith extensively regarding the methodology

of the search, particularly with respect to whether Sgt. Smith had given cues which caused Diego to alert to the driver's door, and also as to whether the award Diego received for alerting might compromise the reliability of the dog sniff. The trial judge concluded that Sgt. Smith's testimony regarding Diego's training was credible and that there was "insufficient evidence of cues or conduct by the trooper to cue Diego into indicating at the location in which he did indicate." The trial court found that "the officer's testimony [was] credible and consistent with the videotape." In regard to the scope of the search, however, the trial court found that the troopers had probable cause to search only the passenger compartment of the vehicle, and not the trunk. While the trial judge found Sgt. Smith's testimony credible that the odor of drugs can travel due to wind, and also the wind and snow were blowing in numerous directions on the night of the incident, the trial judge found it significant that the K-9 did not alert to the trunk of the vehicle, despite having several opportunities to do so. Based on the K-9 hits, the trial court concluded that the troopers had probable cause to search the driver's compartment of the rental car, and perhaps even Reid herself. While the trial court noted on the record that a driver has a heightened expectation of privacy in the trunk, the trial court stated that that was not the primary factor in making its determination in this case. Rather, its decision to grant Reid's motion ultimately rested upon its determination that "the acts of Diego refute[] a reasonable belief that there [were] drugs in the trunk of this car." The trial court issued a journal entry granting Reid's motion on July 30, 2012.

{¶21} The trial court erred in concluding that Sgt. Smith did not have probable cause to search the trunk of Reid's vehicle. The parties in this case stipulated to the training records of the drug-detection dog. The drug-detection dog was specifically trained to detect marijuana, cocaine, methamphetamine, ecstasy, and heroin. The drug dog alerted twice to the driver's side

door where Reid was seated, indicating the presence of one or more of those drugs inside the vehicle, and giving the officers probable cause to search the entire vehicle. *Almazan* at ¶ 15; *Nocon* at ¶ 12; *see also State v. Beavers*, 8th Dist. Cuyahoga No. 88513, 2007-Ohio-2915, ¶ 14 (holding that the extent of the search is not limited to the specific area of the alert because the "dog's alert gave the officers probable cause to search [defendant's] entire car."). As the trunk of the vehicle was logically a place where the drugs could have been stashed, the search of the trunk by the officers was permissible. *Ross*, 456 U.S. at 824. The search revealed that the purse in the trunk of the vehicle contained marijuana and cocaine. As a dog trained in drug detection alerted to the presence of drugs inside the vehicle, the officers had probable cause to search the places in the vehicle where the drugs might reasonably be located, and the trial court erred in granting Reid's motion to suppress.

{¶22} The State's assignment of error is sustained.

III.

{¶23} The State's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.


DONNA J. CARR
FOR THE COURT



WHITMORE, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶24} I respectfully dissent. Under the circumstances of this case, I would affirm the trial court's determination that probable cause did not exist to expand the scope of the search to the trunk of the vehicle.

{¶25} As an initial matter, the trial court's findings of fact are supported by competent, credible evidence, and, are unchallenged by the State. Therefore, we accept them as true and independently examine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court found that the dog only alerted to the front driver's side door and that it walked past the trunk three times without alerting to the trunk. It also found that the car in this case was a rental, that Ms. Reid remained in the car while the dog walked around, and that the direction of the wind had changed numerous times during the

stop. Finally, it found that the troopers had searched the passenger compartment before searching the trunk and had not discovered any contraband. The trial court determined that, while the dog's alert provided the troopers with probable cause to search the passenger compartment and possibly even Ms. Reid, they did not have probable cause to proceed to search the trunk under the circumstances. It noted that this was especially true given the dog's failure to alert to the trunk despite the dog's repeated passes by the trunk thus giving the dog numerous opportunities to alert to the trunk.

{¶26} The majority reverses the trial court on the basis that this Court has previously held that, when "an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle." *See, e.g., State v. Nocon*, 9th Dist. Lorain No. 10CA009921, 2012-Ohio-395, ¶ 12. However, such a per se rule ignores the case-by-case factual inquiry inherent in determining probable cause. It has been repeatedly emphasized that probable cause is a fluid concept that is based upon a case-by-case evaluation of the totality of the circumstances. *Florida v. Harris*, ___ U.S. ___, 133 S.Ct. 1050, 1055 (2013). *See also State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds recognized by State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9. However, the probable cause inquiry is made in keeping with the overarching principles of the Fourth Amendment.

{¶27} A warrantless search is per unreasonable under the Fourth Amendment subject to certain limited exceptions. *California v. Acevedo*, 500 U.S. 565, 580 (1991). However, the applicability of any such exception requires reaching a delicate balance between the competing interests of government and the interest of citizens to be free from a warrantless intrusion into their private affairs. As explained more fully in *State v. Jones*, 9th Dist. Lorain No. 12CA010270, 2013-Ohio-2375, the automobile exception to the warrant requirement has been

grounded upon exigency due to the mobility of a vehicle as well as a diminished expectation of privacy. *Jones* at ¶ 25-26 (Belfance, P.J., dissenting). In *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, the Ohio Supreme Court recognized the distinction between the passenger compartment and the trunk of a vehicle. The Court stated without reservation, "A trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *Id.* at ¶ 51. In making this statement, I believe the court recognized that, under certain circumstances, there would be no probable cause to expand the scope of a search to the trunk of a vehicle. Although, this Court and other appellate courts distinguish *Farris* solely because it involved a human officer as opposed to a narcotics dog, such ignores the essence of the probable cause inquiry when examined against the backdrop of Fourth Amendment principles which are equally present in the Ohio Constitution.

{¶28} In particular, the majority points to the dicta in *United States v. Nielsen*, 9 F.3d 1487 (10th Cir.1993), in which that court suggested that it would not require corroboration of "an alert by a trained drug sniffing dog[.]" *Id.* at 1491. But in making that observation, the Tenth Circuit was concerned with the propensity of law enforcement to manufacture an alleged illegal activity so as to justify a warrantless intrusion, whereas a dog would not have reason to falsely alert. *Id.* The Tenth Circuit's reasoning, however, ignores the fact present in nearly every drug-sniffing dog case: The drug dog is controlled by a person. While the canine may not have an inherent reason to falsely alert, there is no reason it would refuse to do so if ordered to by its handler, who, as the Tenth Circuit also noted, has "an incentive to find evidence of illegal activities and to justify his actions when he had searched without consent * * *."[2] *Id.*

---

[2] The Court in *Nielsen* was clearly troubled by the officer's testimony in that case. *See Nielsen* at 1489 ("The district court believed the officer's testimony * * *. Based upon the cold record we would not have made the same determination[.]").

{¶29} However, more important than the logical loophole in the dicta in *Nielsen* is the fact that *Farris* never mentions the dicta. The majority in *Farris* cited *Nielsen* as a case with comparable facts to support its conclusion that the odor of burnt marijuana would not provide probable cause to search the trunk. *See Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ 52 ("The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *United States v. Nielsen* (C.A.10, 1993), 9 F.3d 1487."). It is unclear how that citation somehow indicates that the Supreme Court was also adopting or approving of *Nielsen*'s dicta about a drug-sniffing dog, a topic that was not before the Court in *Farris*.

{¶30} It is important to reiterate that the fundamental principle of any probable cause determination requires the court to look at the totality of the circumstances. *Harris*, 133 S.Ct. at 1055. "Probable cause * * * is 'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Id*. at 1056, quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The question is always whether "the facts available to [an officer] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present." (Internal quotations and citations omitted.) *Id*. at 1055. *Harris* eschews any attempt to create a concrete, inflexible probable cause checklist that must be mechanically applied irrespective of the facts of the particular case. *See id*. at 1056. Likewise, blind adherence to the notion that a dog alert provides probable cause to expand the scope of a search to the trunk of a vehicle in every case, irrespective of the totality of the facts and circumstances, contravenes the fundamental requirement of examining the totality of the circumstances of each particular case. In my view, *Farris* also recognized that the probable cause inquiry is dependent upon the totality of the circumstances in a particular case. Thus, while

probable cause directed at the passenger compartment might exist, it may not necessarily extend to the trunk under certain circumstances—especially given a heightened expectation of privacy in a closed and private area—while in others it may.

{¶31} Here, the dog was given the command to alert to drugs as it walked toward the back of the vehicle. Then the dog walked past the trunk three times without alerting, put its nose to the trunk area several times, and alerted only on the front door twice. When the compartment of the vehicle was searched, no contraband was found. Based solely upon the uncontested facts found by the trial court, I do not believe any person of "reasonable caution" would believe that the dog was smelling narcotics in the trunk of the vehicle. Similar to *Farris*, the officer searched the passenger compartment and found no contraband. Thus, the trial court reasonably concluded there was simply no probable cause to proceed to search the trunk. Although some further investigation may have been appropriate, this did not occur. *State v. Batchili*, 133 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15 ("[T]he detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.").

{¶32} In its factual findings, the trial court also observed that the wind was changing directions during the stop. The majority employs this finding to conclude that it would be impossible to determine where the smell was coming from, although the trial court did not make such a finding. Thus, the majority reasons that the dog could have been smelling narcotics in the trunk, and, therefore, probable cause existed to search the trunk. The majority is essentially concluding that the environmental conditions caused the dog to become less accurate than it otherwise could have been. I disagree with the majority's implicit premise that when a dog's

alert becomes less reliable this somehow supports a finding of probable cause for a greater search. [3]

---

[3] In this case, the parties did not fully examine the actual accuracy of a drug dog's alert, the actual biological mechanism of the dog's sense of smell nor how the dog's accuracy affects the probable cause analysis. During his testimony, Sergeant Smith acknowledged that his canine partner had made numerous false alerts although he did not provide a precise number. He also acknowledged that "[n]o dog is perfect." When a dog search is randomly conducted,

> the risk of "false positives," resulting in a full search of a vehicle containing no drugs, is significant. This is because "dog sniffs are least effective when they survey a random population," as when dogs are used merely because a traffic stop occurred close by, for then "even a highly accurate dog will inevitably trigger numerous false alerts," as shown by this mathematical model:

> For example, assume that a given narcotics detection dog and handler team maintains an accuracy rate of 98%. This means that whenever drugs are present, the dog will alert 98% of the time. Also assume that whenever drugs are absent, the dog team will not alert 98% of the time. Assume further that 0.5% of the population at large has drugs on their possession. If the team conducts a random sniffing expedition of 10,000 people (or objects), with no evidence supporting or refuting possession of drugs, what is the probability that the dog and handler team will detect cocaine?

> If the dog sniffs 10,000 people, 50 (10,000 x.005) will possess drugs. Out of these 50, the dog will correctly alert to 49 (50 x.98). Of the remaining 9950 people that do not possess drugs, the dog will falsely alert to 2% of this group, resulting in 199 (9950 x.02) false detections.

> Out of this population of 10,000, the dog has positively alerted to 248 people, 49 of which are correct detections and 199 are false alerts. Thus, the probability that an individual actually possesses cocaine based on this dog is 49 out of 248, a detection rate of less than 20%.

4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, Section 9.3(f) (5th Ed.2012), quoting Bird, *An Examination of the Training and Reliability of the Narcotics Detection Dog*, 85 Ky.L.J. 405, 427-428, 430 (1997). These issues are precisely what a trial court should keep in mind when determining whether probable cause exists under the circumstances. *See Harris*, 133 S.Ct. at 1057-1058 (2013) ("A defendant * * * must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. * * * [E]ven assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions.").

{¶33} Furthermore, despite the fact that the wind changed directions, the dog alerted to the same spot. Logically, if the wind direction was affecting the dog's alert, the fact the wind changed direction would change where the dog alerted, which is the exact opposite of what happened in this case. Despite the changing conditions, the dog alerted to the same spot twice and never alerted to the trunk. Moreover, it is unclear how the wind would have prevented a dog, which put its nose to the trunk several times as well as areas around the trunk, from smelling narcotics. Under the totality of the circumstances, a person of reasonable caution would believe that the dog was detecting the odor of narcotics emanating from the passenger compartment of the car. At that point, the trooper had probable cause to search the passenger compartment, which he did. However, his search did not uncover any evidence of illegal activity.

{¶34} Thus, the question is whether under the totality of the circumstances of this case there was probable cause to expand the scope of the search to the trunk of the car where no contraband was found in or near the location where the dog alerted and the dog never alerted to the trunk despite multiple opportunities to do so. I do not see how, given these facts, a reasonable person would believe that contraband existed in the trunk of the car.[4] *See Jones*, 2013-Ohio-2375, at ¶ 34 (Belfance, P.J., dissenting). Accordingly, I would affirm the trial court's decision to grant Ms. Reid's suppression motion.

---

[4] The trial court also reasonably concluded that, although probable cause to search the trunk did not exist, the Trooper could have prolonged the stop to make further inquiry of Ms. Reid and to search Ms. Reid for the presence of drugs, in light of the numerous alerts to the driver's side of the vehicle.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellant.

SHIMANE K. SMITH, Attorney at Law, for Appellee.