[Cite as *State v. Ross*, 2016-Ohio-7082.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 15CA0021-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALBERT ROSS, III | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 14 CR 0251 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2016

MOORE, Judge.

**{¶1}** Defendant, Albert Ross, III, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** In 2014, Deputy Dan Kohler of the Medina County Sheriff's Department initiated a traffic stop of Mr. Ross due to a marked lanes violation. After a canine unit arrived at the scene, the canine officer performed a drug sniff of the vehicle, during which the dog alerted to the presence of narcotics. Thereafter, the officers searched Mr. Ross' vehicle, discovering a large amount of marijuana in the trunk. As a result, the Medina County Grand Jury indicted Mr. Ross on one charge of possession of marijuana. Mr. Ross pleaded not guilty to the charge, and he subsequently filed a motion to suppress the evidence. The trial court denied Mr. Ross' motion. Thereafter, Mr. Ross changed his plea to no contest. The trial court found Mr. Ross guilty, and it issued an entry imposing sentence. Mr. Ross timely appealed from the sentencing

entry, and he now presents two assignments of error for our review. We have consolidated the assignments of error to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDENCE OF AN UNCONSTITUTIONAL SEIZURE DUE TO LAW ENFORCEMENT'S UNLAWFUL EXTENSION OF TIME FOR STOP[.]

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDENCE DISCOVERED IN A CONSTITUTIONALLY PROTECTED AREA WITHOUT SUFFICIENT EXCEPTION OR ADDITIONAL PROBABLE CAUSE[.]

{¶3}　In his assignments of error, Mr. Ross argues that the trial court erred in denying his motion to suppress because the stop was unlawfully extended and the officer unlawfully searched his trunk. We disagree.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied).

{¶4}　Here, at the hearings on Mr. Ross' motion to suppress, Deputy Kohler and Officer Mark Luciano testified on behalf of the State. Deputy Kohler testified that, on March 27, 2014, at 1:18 a.m., he initiated a traffic stop of Mr. Ross' vehicle for a marked lane violation. The deputy approached Mr. Ross' car on the passenger side for safety purposes. The deputy informed Mr. Ross of the reason for the stop, and he asked Mr. Ross for his identification. While

he was speaking with Mr. Ross, Deputy Kohler smelled the odor of burnt marijuana emanating from the car. The deputy then advised Mr. Ross that he was going to issue him a written warning. The deputy indicated that, generally, to issue a written warning for the traffic offense would have taken him about seven or eight minutes.

{¶5} Once the deputy returned to his cruiser, he contacted the canine unit of the Brunswick City Police Department to respond to the stop. The deputy indicated that, based upon his report, twenty minutes elapsed from the time that he stopped Mr. Ross until the canine unit arrived. Once the canine officer arrived, at 1:38 a.m., Deputy Kohler walked to the vehicle and again informed Mr. Ross that he was going to receive a written warning for the traffic violation, and the deputy further advised Mr. Ross that he had smelled burnt marijuana. Mr. Ross told the deputy that his friends had been smoking marijuana. The deputy placed Mr. Ross in the back of his cruiser while the canine officer performed the drug dog sniff.

{¶6} Officer Luciano testified that he is a canine handler with the City of Brunswick Police Department, and he received the call from Deputy Kohler to assist him with the traffic stop at approximately 1:30 a.m. When Officer Luciano arrived at the scene, the stopped vehicle was unoccupied with the engine running, and Deputy Kohler asked him to run his dog around the vehicle. After first performing a cursory sniff, the officer walked the dog around the car, and the dog alerted at the seam of the front passenger door. The officer explained that the dog alerts to the presence of any narcotic in the same manner, and there is no way to determine from the alert whether the dog has detected marijuana specifically, or whether it has detected the scent of burnt or raw marijuana. After the alert, the officers conducted a search of the vehicle. Officer Luciano observed loose marijuana "shake" on the floor board, center console gear shift, and between the passenger door and the seat.

{¶7} Deputy Kohler testified that, during the search, he opened the trunk and located a bag which contained a vacuum sealed bag of green vegetable matter, together with a vacuum seal machine and extra bags. Deputy Kohler then placed Mr. Ross under arrest.

{¶8} In the trial court's entry denying the motion to suppress, the court acknowledged that the traffic stop was initiated at 1:18 a.m., and the canine officer arrived at 1:38 a.m. However, the trial court also set forth that Deputy Kohler testified that seven to eight minutes elapsed while waiting for the dog to arrive. Mr. Ross challenges the trial court's finding that Deputy Kohler testified that the dog arrived within seven to eight minutes. Given the testimony of the deputy as set forth above: that twenty minutes had elapsed between the stop and the arrival of the canine officer, the portion of the trial court's entry indicating that the deputy testified that the canine officer arrived within seven to eight minutes is not supported by competent, credible evidence. Accordingly, we will review Mr. Ross' arguments in light of the uncontroverted testimony that twenty minutes elapsed between the stop and the arrival of the canine.

{¶9} From the evidence adduced at the suppression hearing, Mr. Ross maintains that the length of the detainment and the search of his trunk violated his Fourth Amendment rights, and all evidence obtained as a result of this search and seizure should have been suppressed.

{¶10} The Fourth Amendment to the U.S. Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. "Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment." *State v. Valenti*, 9th Dist. Summit No. 26807, 2013-Ohio-5564, ¶ 13, quoting *Mapp v. Ohio*, 367 U.S. 643, 657 (1961).

{¶11} "A traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *State v. Harper*, 9th Dist. Medina No. 12CA0076-M, 2014-Ohio-347, ¶ 9, citing

*Whren v. United States*, 517 U.S. 806, 809-810 (1996). "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." (Internal quotations and citation omitted.) *State v. Norvet*, 9th Dist. Medina No. 14CA0114-M, 2016-Ohio-3494, ¶ 6; *see also Rodriguez v. United States*, ___U.S.____, 135 S.Ct. 1609, 1612 (2015) ("A seizure justified only by a police-observed traffic violation * * * become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a [warning] ticket for the violation.") (Internal quotations and citation omitted.). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." (Internal quotations and citations omitted.) *Norvet* at ¶ 6. "[I]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns." (Internal quotations and citations omitted.) *Id.*

{¶12} "[W]arrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. The [S]tate has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable." (Internal quotations and citation omitted.) *Valenti*, at ¶ 13. "This Court has held that reasonable suspicion of drug-related activity is not necessary for an officer to request that a drug dog be brought to the scene of a traffic stop and perform a sniff of a detained vehicle when the vehicle is being otherwise lawfully detained at the time."

*Norvet* at ¶ 7; *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 8 ("[W]hen a valid traffic stop has been initiated, an exterior dog sniff does not constitute a search within the meaning of the Fourth Amendment."). An alert by a trained drug dog to a lawfully detained vehicle provides officers with probable cause to search the entire vehicle, including the trunk. *See Valenti* at ¶ 16; *Reid* at ¶ 9.

{¶13} Here, Mr. Ross does not challenge the basis for the traffic stop. Instead he maintains that the stop was unconstitutionally prolonged. However, upon approaching the vehicle, Deputy Kohler testified that he smelled the odor of burnt marijuana. Mr. Ross acknowledges that the odor of burnt marijuana provided the officer with a probable cause to search the passenger compartment of the car, but he argues that the deputy was required to immediately engage in this search limited to the passenger compartment of the car, instead of waiting for the canine unit. *See State v. Burgin*, 9th Dist. Lorain No. 12CA010277, 2013-Ohio-4261, ¶ 16 (smell of marijuana by a qualified person provides probable cause to search the passenger compartment of the vehicle); *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 52 (search of vehicle based upon officer's detection of the odor of burnt marijuana is limited to the passenger compartment of the vehicle). In support of his position, Mr. Ross maintains that permitting an officer to extend the stop to wait for a canine unit where the officer has already detected the odor of burnt marijuana, is contrary to the Ohio Supreme Court's decision in *Farris*.

{¶14} In *Farris*, the Ohio Supreme Court held that "[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *Id.* at ¶ 51. The Court concluded that "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle." *Id.* at ¶ 52, citing *United States v. Nielsen*, 9 F.3d 1487 (10th

Cir.1993). Accordingly, because the detection of the odor of burnt marijuana alone by the officer does not justify a search of the trunk, Mr. Ross argues that the detection of the same odor by the dog should similarly not justify a search of the trunk. Therefore, Mr. Ross maintains that, based upon the *Farris* holding, the further detention to await the drug dog unconstitutionally prolonged the stop, and that, despite the dog's alert, search of his trunk was unlawful.

{¶15} However, a majority of this Court has recognized a distinction drawn in *Farris* between the detection of the odor of marijuana by an officer and the detection of narcotics by a drug sniffing dog. *Reid*, 2013-Ohio-4274, at ¶ 11-12. In *Reid*, this Court noted that the Ohio Supreme Court, "in reaching its ultimate conclusion in *Farris*, * * * relied on the Tenth Circuit's decision in [*Nielsen*].

> *Nielsen*, like *Farris*, involved a scenario where a police officer smelled the odor of burnt marijuana emanating from a vehicle. While the court concluded a human's detection of burnt marijuana did not establish probable cause to search the trunk absent further corroboration, it specifically contrasted that scenario from a dog alert, stating, "If this were a case of an alert by a trained drug sniffing dog with a good record, we would not require corroboration to establish probable cause [to search the trunk]." *Nielsen* at 1491. In noting that a positive alert by a drug sniffing dog would be sufficient to establish probable cause, the court continued, "The dog would have no reason to make a false alert. But for a human sniffer, an officer with an incentive to find evidence of illegal activities and to justify his actions when he had searched without consent, we believe constitutional rights are endangered if limitations are not imposed." *Id.* Thus, the court drew a sharp distinction between a positive alert by a drug sniffing dog that is trained to detect the presence of any number of narcotics, and a human's detection of burnt marijuana, as was the case in both *Nielsen* and *Farris*.

*Reid* at ¶ 12. Accordingly, this Court has interpreted *Farris* to support the difference in the treatment of an officer's detection of the odor of burnt marijuana and the detection of narcotics by a properly trained drug dog. *See id.*

{¶16} Here, when Deputy Kohler smelled the marijuana, it provided him with reasonable suspicion to justify a reasonable extension of the detention to further investigate. *See*

*State v. Ross*, 9th Dist. Lorain No. 12CA010196, 2012-Ohio-6111, ¶ 8, 12. Moreover, because the dog alerted in this case, we conclude that the officer had probable cause to search the trunk. *Reid* at ¶ 9, 12.

{¶17} Accordingly, Mr. Ross' assignments of error are overruled.

III.

{¶18} Mr. Ross' assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.