[Cite as *State v. Valenti*, 2013-Ohio-5564.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26807 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GINA R. VALENTI | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 08 2478 |

DECISION AND JOURNAL ENTRY

Dated: December 18, 2013

MOORE, Presiding Judge.

{¶1}    Defendant, Gina Valenti, appeals from the judgment of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}    On September 28, 2010, the Summit County Grand Jury indicted Ms. Valenti on three charges stemming from a police officer's discovery of purported heroin, syringes, and Suboxone, in Ms. Valenti's purse during a search of a car registered to her male companion, Tyler Griffith.

{¶3}    Ms. Valenti pleaded not guilty to all of the charges.  She then filed a motion to suppress evidence, claiming that it  resulted from an illegal search of the car while she and Mr. Griffith were unlawfully detained.  After holding an evidentiary hearing, the trial court denied her motion.  Thereafter, Ms. Valenti amended her plea to no contest, and the trial court found her

guilty on all counts contained in the indictment.  In a journal entry dated January 25, 2013, the trial court imposed sentence.

{¶4}    Ms. Valenti timely filed a notice of appeal from the sentencing entry, and she now presents one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT OVERRULED [MS. VALENTI]'S MOTION TO SUPPRESS AS THE POLICE LACKED PROBABLE CAUSE TO SEARCH THE VEHICLE OR TO DETAIN [MS. VALENTI] WHILE A K-9 WAS CALLED AND RESPONDED TO [THE] SCENE.

{¶5}    In her sole assignment of error, Ms. Valenti argues that the trial court erred in denying her motion to suppress.  We disagree.

Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.)  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied).

{¶6}    At the hearing on Ms. Valenti's motion to suppress, Officer Jesse Reedy, of the City of Stow Police Department, and Officer Nate Ickes, of the City of Tallmadge Police Department, testified on behalf of the State.  Ms. Valenti does not challenge the officers' testimony, on which the trial court relied in denying her motion.

{¶7}    Officer Reedy testified that, on August 18, 2012, he responded to a call pertaining to an altercation between a man and woman outside of a silver car at a local playground.  When

he arrived at the playground, Officer Reedy overheard Mr. Griffith and Ms. Valenti, arguing in the front seat of a silver car, although he could not make out the words the pair was using. Ms. Valenti's infant child was in a car seat in the backseat of the car.

{¶8} When the officer approached the car, Ms. Valenti exited through the front passenger door, and immediately bent back into the front seat of the car. The officer asked Ms. Valenti to come speak with him, and she walked toward the officer, and "began to circle around to the side to where [the officer's] attention had been drawn to her, which would have been away from the car." The officer then did a "sidestep" in order to keep both individuals in his line of sight. The officer asked Ms. Valenti to explain the disturbance, and she responded vaguely that she had been arguing with Mr. Griffith. In evaluating Ms. Valenti's responses, the officer observed that she had a "glazed" look in her eyes, was slow in her mannerisms, and had scabs on her face. Through his experience, the officer testified that he recognized these factors as indicative of recent drug use. While he was speaking to Ms. Valenti, the officer could hear Mr. Griffith, who was still in the car, mutter "a couple cuss words," and he observed Mr. Griffith reaching around the car in several different directions. During his conversation with Ms. Valenti, two other children of hers, approached them. The officer continued to speak with Ms. Valenti until another police officer arrived on the scene, at which time Officer Reedy approached the car to speak with Mr. Griffith.

{¶9} While speaking with Mr. Griffith, the officer observed that Mr. Griffith provided vague answers, exhibited erratic behavior by "physically reaching all around, turning around, looking numerous directions." The officer also observed that he had "glazed" eyes, and that his pupils were constricted and did not respond to his flashlight. The officer requested Mr. Griffith's identification. While looking for his identification, Mr. Griffith opened a tray on the dashboard,

revealing a plastic bag "tied into a notch," which the officer recognized as consistent with a method of transporting drugs. "Almost as soon as he open[ed] the tray, he slam[med] it shut real quick." The officer asked him what was in the tray, and Mr. Griffith "acted as if he had no idea what [the officer] was talking about." The officer then told him that he had seen a bag in the tray, and asked him to open it back up. Mr. Griffith complied by opening the tray. Once the tray was re-opened, the officer could see that the bag contained a white powdered substance. Mr. Griffith reluctantly handed the bag to the officer at the officer's request. The officer asked what was in the bag, and Ms. Valenti responded that the bag contained crushed aspirin, which Ms. Valenti rubbed on her gums to alleviate pain from a sore tooth. Because of windy conditions, the officer was unable to field test the substance. He requested Mr. Griffith's consent to search the vehicle, but Mr. Griffith declined.

{¶10} The other officer at the scene then requested that a K-9 unit be dispatched. Approximately eight minutes after the request, (and approximately nineteen minutes after Officer Reedy initially arrived at the scene), a K-9 unit arrived from a neighboring jurisdiction, the City of Tallmadge. Officer Nate Ickes, of the Tallmadge Police Department, and his certified drug dog, Axel, performed a walk-around of the car. Officer Ickes testified that Axel alerted near the driver's door. Thereafter, the officers searched the car. Officer Reedy testified that a purse was located on the front passenger seat. Inside the purse, Officer Reedy discovered an uncapped syringe containing a brown liquid, together with two spoons containing a white residue and burn marks, two unused syringes, two packets of Suboxone, and loose red pills, later identified as antibiotics. In the glove compartment of the vehicle, Officer Reedy found medication that was labeled as prescribed to Mr. Griffith.

{¶11} The officers then informed Ms. Valenti and Mr. Griffith of their Miranda rights, and Officer Reedy asked Ms. Valenti to identify the substance contained in the syringe. In response, Ms. Valenti silently mouthed the word "heroin." The officers then placed Ms. Valenti and Mr. Griffith under arrest.

{¶12} On appeal, Ms. Valenti does not challenge the officer's initial approach and detention of her in response to the call regarding the altercation. However, she maintains that the facts establish that she was unlawfully detained past the time required to investigate the altercation, and that the car was unlawfully searched. Accordingly, she maintains that all evidence obtained as a result of the unlawful search and seizure should have been suppressed.

{¶13} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. "[W]arrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. The [S]tate has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable." (Internal citations and quotations omitted.) *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 657 (1961). With these principles in mind, we will separately address Ms. Valenti's arguments set forth in her assignment of error pertaining to (1) the length of her detainment and (2) the officers' search of the car.

Length of Detainment

{¶14} Generally, a police officer must have probable cause to make an arrest for criminal behavior in order to seize a person for purposes of the Fourth Amendment. *Florida v.*

*Royer*, 460 U.S. 491, 498 (1983). However, as an exception to this rule, "[i]t is well established that a police officer may make an investigative stop of an individual if the officer can point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Taylor*, 9th Dist. Summit No. 16686, 1994 WL 395616, *2 (July 27, 1994), citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Thus, "a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 13. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 14, quoting *Royer* at 500. Therefore, the officer may not continue the detention for reasons unrelated to the initial purpose of the stop, unless he discovers additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity and justify extending the detention. *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus, and *State v. Shook*, 9th Dist. Lorain No. 93CA005716, 1994 WL 263194, *3 (June 15, 1994). The reasonableness of the duration of detention is viewed through a totality of circumstances. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12.

{¶15} Here, Officer Reedy pointed to specific, articulable facts that warranted further investigation under the circumstances. Ms. Valenti and Mr. Griffith both were slow in their mannerisms and appeared to have glazed looks in their eyes. Ms. Valenti walked toward the officer in a manner which made him lose sight of Mr. Griffith, who remained in the vehicle, muttering to himself and reaching about the car in all directions. The appearance and behavior of the individuals, based upon the officer's experience, were consistent with the appearance and

behavior of individuals who had recently engaged in drug use. Also, while obtaining Mr. Griffith's identification, the officer saw the plastic bag that was tied in a manner consistent with the transportation of drugs. When Mr. Griffith re-opened the tray, the officer saw a white powdered substance in the bag. Under the totality of these circumstances, we conclude that the officer had a reasonable suspicion of illegal drug activity, and the additional eight-minute duration of the stop to await the K-9 unit was reasonable. Accordingly, insofar as Ms. Valenti challenges the duration of the stop, her assignment of error is overruled.

Search of Vehicle

{¶16} This Court has held that, "once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *State v. Ramirez*, 9th Dist. Medina No. 04CA0024, 2004-Ohio-6541, quoting *State v. Carlson*, 102 Ohio App.3d 585, 600 (9th Dist.1995). *See also State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274.

{¶17} Although Ms. Valenti appears to challenge in her assignment of error both the duration of the stop and the search of the car, Ms. Valenti has not developed an argument in her brief with regard to the search of the car, aside from (1) a limited argument that there was no probable cause to search the car because neither she nor Mr. Griffith was under arrest, and (2) a general suggestion that the search was the fruit of a detainment of an unlawful duration. Ms. Valenti's limited argument that an officer lacks probable cause to search a car absent an arrest disregards this district's case law pertaining to drug dog alerts, and Ms. Valenti does not challenge the alert on appeal. In regard to Ms. Valenti's general contention that the search of the car was fruit of an unlawful detention, we concluded above that the duration of the detention was reasonable. We decline to develop any further argument on her behalf. *See State v. Taylor*, 9th

Dist. Medina No. 2783-M, 1999 WL 61619, *3 (Feb. 9, 1999) (it is the appellant's responsibility to ensure that her argument "is supported by citations to legal authority and facts in the record"); *see also* App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [the appellant's] claims[.]" *Catanzarite v. Boswell*, 9th Dist. Summit No. 24184, 2009-Ohio-1211, ¶ 16.

{¶18} Accordingly, Ms. Valenti's sole assignment of error is overruled.

### III.

{¶19} Ms. Valenti's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

PATRICIA J. SMITH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.