[Cite as *State v. Robinson*, 2014-Ohio-579.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    26741 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAYSHAWN L. ROBINSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 12 04 1099 (B) |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2014

BELFANCE, Judge.

{¶1}    Rayshawn Robinson appeals from his convictions in the Summit County Court of Common Pleas.  For the reasons set forth below, we reverse and remand the matter for further proceedings.

**I.**

{¶2}    On April 12, 2012, Cleophus Thompson was arrested when he was found pushing a stolen car.  Officer Patty Thorn, the driver of the patrol wagon holding Mr. Thompson, radioed Detective Michael Zimcosky and told him that an individual she had in the wagon had drug information that he wanted to relate to her and to a narcotics officer in the hopes that it might help his case.  Detective Zimcosky met Officer Thorn on South Arlington Street where Mr. Thompson told the officers that he had just stolen a car and ran out of gas in an attempt to fill the tank up on the vehicle because he was late for a meeting with a subject by the name of "YG" who was supposed to sell him six grams of crack cocaine.

{¶3}    Mr. Thompson described YG as a black male in his twenties who drove a black SUV and a red SUV and lived in an apartment complex on Neville Street.  Mr. Thompson stated that YG's vehicles would be parked in the rear lot of the apartment complex.  Mr. Thompson also stated that YG did not carry drugs but that his girlfriend, who was white, would accompany him and would carry drugs.

{¶4}    After receiving permission from his supervisor, Detective Zimcosky sent several surveillance cars out to the Neville Street area.  Detective Zimcosky also told Detective Kandy Shoaff to go to the apartment complex on Neville Street and attempt to find the black and red SUVs.  Detective Shoaff saw a black SUV and a red SUV parked behind an apartment complex on Neville Street.  The apartment complex was described as containing a series of approximately 12 to 14 apartment buildings with a narrow alley for parking in the rear of the buildings.

{¶5}    Mr. Thompson was directed to place a call on his cell phone while Detective Zimcosky listened on speakerphone.  Detective Zimcosky described the call as very short, lasting 15 to 20 seconds, and stated that the substance of the call was that Mr. Thompson was at the Taco Bell and wanted the other man to pick him up.  Detective Zimcosky also indicated that there was no discussion about a possible drug deal during the short conversation.

{¶6}    Shortly after the call was made, Detective Shoaff radioed Detective Zimcosky to inform him that the black SUV had left the parking lot and was driving up Neville Street.  Detective Shoaff could not see into the vehicle and thus could only discern that there were people in the vehicle without further detail as to their description.  Detective Zimcosky planned to stop the black SUV as soon as it turned south on South Arlington Street toward the Taco Bell.  However, the black SUV never went to the Taco Bell.  Instead, it turned north on South

Arlington Street, which was away from the Taco Bell, and proceeded through a drive-through before returning to Neville Street.

{¶7} The officers stopped the black SUV after it returned from the drive-through to Neville Street. Officers searched the car and found a BB gun, a scale, and about $600. Mr. Robinson, who was driving, was arrested, and the passenger, Megan Husk, was taken into custody. Ms. Husk later told police officers that she had four and a half grams of crack cocaine in her bra.

{¶8} Based on the search of the car and the information provided by Mr. Thompson, Detective Zimcosky obtained a search warrant for Mr. Robinson's address. Officers found 38 grams of crack cocaine, a weapon, ammunition for different weapons, and a large amount of cash at Mr. Robinson's address.

{¶9} Mr. Robinson was charged with trafficking in cocaine, possession of cocaine, and having weapons while under disability. Mr. Robinson moved to suppress the evidence obtained from the stop of his vehicle. The trial court denied Mr. Robinson's motion to suppress. Mr. Robinson then pleaded no contest to all three charges, and the court sentenced him to seven years in prison.

{¶10} Mr. Robinson has appealed, raising one assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING MR. ROBINSON'S MOTION TO SUPPRESS, IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTION 14, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶11} In his sole assignment of error, Mr. Robinson argues that his motion to suppress the evidence obtained from the stop and search of his vehicle should have been granted because the officers did not have reasonable suspicion to stop and search his vehicle. We agree.

{¶12} Generally, "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. Summit No. 23600, 2007-Ohio-4001, ¶ 6.

{¶13} The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Stopping a vehicle and detaining its occupants constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). However, an investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). Whether reasonable suspicion exists is based on the totality of the circumstances. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7.

{¶14} In some cases, reasonable suspicion may be based on information from an informant or from an anonymous tip. *See Alabama v. White*, 496 U.S. 325, 330-331 (1990). Information received from a tip can foster reasonable suspicion if it is supported by significant indicia of reliability or corroborated by independent police work. *Id.* at 330-331. If the only information that police had before the stop came from an informant's tip, reasonable suspicion

must be determined based on whether the tip had significant indicia of reliability to justify the stop. *Weisner* at 299, citing *White* at 330.

{¶15} To ensure significant indicia of reliability, courts have determined that there are three categories of informants: anonymous informants, known criminal informants who have given reliable tips in the past, and identified citizen informants. *Weisner* at 300. If an informant is implicated in criminal activity, there is no presumption that his tip is reliable. *State v. Shepherd*, 122 Ohio App.3d 358, 366 (2d Dist.1997). This is because, unlike an identified citizen informant who is not involved yet wants to aid a police investigation, an informant implicated in criminal activity may "have a bad motive in giving police a tip[.]" *State v. Rivera*, 6th Dist. No. L-04-1369, 2006-Ohio-1867, ¶ 20.

{¶16} In this case, Mr. Thompson was not a presumptively reliable source of information. He had never given tips to police in the past and, thus, was not a known informant with a track record to support his credibility. He was already under arrest when he spoke to Detective Zimcosky and, as Detective Zimcosky indicated, wanted to provide information in the hope that he could help his own criminal matter. As such, Mr. Thompson's tip lacked reliability and, as conceded by the State at oral argument, his tip was more akin to that of an anonymous informant. *See Shepherd* at 366; *Rivera* at ¶ 20.

{¶17} Anonymous informants are generally treated as unreliable, and police must corroborate their tips with independent police work. *Weisner*, 87 Ohio St.3d at 300, citing *White*, 496 U.S. at 329. Tips are considered more reliable when officers are able to corroborate a suspect's future actions than when officers merely confirm currently existing conditions. *See also Illinois v. Gates*, 462 U.S. 213, 245 (1983) (An anonymous letter listed "future actions of third parties ordinarily not easily predicted" that police later corroborated independently.); *White*

at 332 (An informant's "ability to predict respondent's *future behavior* * * * demonstrated inside information * * *.") (Emphasis in original.).

{¶18} Mr. Robinson argues that the trial court erred because it incorrectly concluded that Detective Zimcosky and Detective Shoaff independently corroborated that potential drug buy that was to occur at the Taco Bell. Mr. Robinson further argues that, in reaching its conclusion, the trial court relied in part upon facts existing after the stop. We agree.

{¶19} Given the totality of the circumstances, we conclude that, at the time of the stop, Mr. Thompson's tip was not sufficiently corroborated to furnish reasonable suspicion that the occupants of the vehicle were committing or about to commit a crime. The record establishes that Mr. Thompson's tip was unreliable, and, thus, the police were required to independently corroborate the tip. *See Weisner* at 300. Detective Shoaff was able to confirm the existence of vehicles matching the general description in the location given by Mr. Thompson. Therefore, the police were able to confirm previously existing conditions or conditions that were easily known to others. Detective Shoaff also relayed the fact that one of the vehicles left the location shortly after Mr. Thompson called YG. However, neither officer was able to verify the significant aspects of Mr. Thompson's tip that detailed the suspect's future behavior, namely, that YG, a black male, would go to the Taco Bell with a white female to complete a drug deal. Detective Shoaff stated that she did not see who entered the vehicle and could not determine whether there was a black male and white female in the vehicle as it left the apartment complex. Moreover, the vehicle never went to the Taco Bell and did not even initially turn in the direction of the Taco Bell after it left the apartment complex, which would have been consistent with the tip. Instead, the vehicle proceeded north on South Arlington Street in the opposite direction of the Taco Bell where it ultimately entered a drive-through. After proceeding through the drive-through, the

vehicle did not go to the Taco Bell but instead returned to Neville Street where it was stopped before it reached the drive of the apartment complex. Thus, police observed benign, non-criminal behavior that ultimately was inconsistent with the predictions of the tipster. Accordingly, on the whole, the significant details of the tip were not independently corroborated. *See White* at 330 (In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer.); *see also Florida v. J.L.*, 529 U.S. 266, 272 (2000) (A tip should "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.").

**{¶20}** Given the totality of the circumstances, we agree that the trial court erred in its determination that there was reasonable articulable suspicion to effectuate the stop. Mr. Robinson's assignment of error is sustained.

## III.

**{¶21}** In light of the foregoing, the judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

VALERIE KUNZE, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.