[Cite as *State v. Love*, 2015-Ohio-142.]

STATE OF OHIO       )             IN THE COURT OF APPEALS
                         )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN     )

STATE OF OHIO                     C.A. No.       13CA010388

      Appellee

      v.                             APPEAL FROM JUDGMENT
                                         ENTERED IN THE
LEON O. LOVE                     COURT OF COMMON PLEAS
                                         COUNTY OF LORAIN, OHIO
      Appellant                      CASE No.      10CR081931

DECISION AND JOURNAL ENTRY

Dated: January 20, 2015

BELFANCE, Presiding Judge.

{¶1} Leon Love appeals the order of the Lorain County Court of Common Pleas denying his motion to suppress. For the reasons set forth below, we reverse.

I.

{¶2} Officers Miguel Baez and Detective Middlebrooks stopped Mr. Love while he was driving his vehicle in order to arrest his passenger, Calvin Wright, who had an outstanding warrant for unpaid fines. Upon arresting Mr. Wright, Detective Middlebrooks began to ask Mr. Love questions about whether Mr. Love had a drug problem, whether he rented out his vehicle to drug dealers, and whether he had drugs or weapons on him. Mr. Love denied having drugs and responded, "'You can check me and my vehicle.'" Upon finding crack cocaine in his right change pocket, Mr. Love was arrested.

{¶3} Mr. Love was indicted for possession of drugs in violation of R.C. 2925.11(A) and possession or use of drug paraphernalia in violation of R.C. 2925.14(C)(1). Mr. Love filed a

motion to suppress the evidence against him, arguing that the officers had lacked reasonable, articulable suspicion to stop his car, that they had impermissibly extended the stop, and that his consent to the search was not voluntary. Following a hearing, the trial court denied Mr. Love's suppression motion in a single-sentence entry. Mr. Love subsequently pleaded no contest to the charges. The trial court found him guilty of both charges and sentenced Mr. Love to three years of community control.

{¶4} Mr. Love has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING MR. LOVE'S MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM AN UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶5} Mr. Love argues on appeal that the trial court erred when it denied his motion to suppress.

{¶6} The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Unfortunately, the trial court did not issue any findings of fact, instead denying the motion in a single sentence. In some cases, the failure of the trial court to make this findings prevents our

review of the order. *See, e.g., State v. Gomez*, 9th Dist. Lorain No. 13CA010389, 2014-Ohio-3535, ¶ 11-12. However, in this case, there does not appear to be any dispute concerning the facts adduced via Officer Baez's testimony. *Compare with id.* at ¶ 11 ("At the end of the suppression hearing, the court noted that the issue turned on the credibility of the witnesses * * *."). Thus, we conclude that we are able to address the merits of this appeal.

{¶7} "The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures." *State v. Robinson*, 9th Dist. Summit No. 26741, 2014-Ohio-579, ¶ 13. "Searches and seizures conducted outside the judicial process are per se unreasonable under the Fourth Amendment, subject to well-delineated exceptions." *Id.*, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "A seizure occurs when an individual is detained under circumstances in which a reasonable person would not feel free to leave the scene[. Therefore,] both an investigatory stop and an arrest [] constitute 'seizures' within the meaning of the Fourth Amendment." *State v. Snyder*, 9th Dist. Medina No. 06CA0018-M, 2006-Ohio-6911, ¶ 13. Likewise, the Supreme Court has noted that "not all seizures of the person must be justified by probable cause to arrest for a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reasonable suspicion requires that the officer "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In considering whether there is reasonable articulable suspicion, we consider the totality of the circumstances. *See State v. Walker*, 9th Dist. Summit No. 25744, 2011-Ohio-5779, ¶ 12. In addition,

> when a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is

not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*See State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus.

{¶8} Officer Baez was the sole witness at the suppression hearing. He testified that he and Detective Middlebrooks were set up for surveillance at a known drug house operated by Mr. Wright. They observed a vehicle back out and immediately recognized Mr. Love as the driver and Mr. Wright as the passenger. Officer Baez acknowledged that the purpose of the stop was to effectuate a warrant against Mr. Wright for unpaid fines. Officer Baez also acknowledged that, at the time of the stop, he had not observed Mr. Love commit any traffic offenses, did not see him involved in any criminal activity prior to stopping the vehicle, and did not know what Mr. Love was doing that day.

{¶9} Upon stopping the vehicle and arresting Mr. Wright, Detective Middlebrooks began questioning Mr. Love about his relationship with Mr. Wright while Detective Baez stood about five feet away feet away listening.[1] Mr. Love told Detective Middlebrooks that he had a drug problem and that he would allow drug dealers to use his vehicle. Detective Middlebrooks asked Mr. Love if he had any drugs or weapons on him, and Mr. Love replied "'No[.] * * * You can check me and my vehicle.'" Detective Middlebrooks performed a pat-down on Mr. Love and discovered a substance that appeared to be crack cocaine. A field test came back positive for cocaine, and Mr. Love was placed under arrest.

---

[1] The record reflects that, as this exchange ensued, Mr. Love was outside of the vehicle although there is no explanation as to how or why he was outside of his vehicle. In addition, Mr. Wright's location is unclear from the record

**{¶10}** Mr. Love argues that he was impermissibly seized by law enforcement as there was no reasonable, articulable suspicion warranting the investigatory detention.[2] In this case, the sole purpose of the stop was to arrest Mr. Wright due to a warrant for unpaid fines. Officer Baez acknowledged that the detectives did not suspect Mr. Love of any criminal behavior and had not observed any behavior giving rise to any suspicion of criminal activity. Notwithstanding, upon stopping the vehicle and arresting Mr. Wright, Mr. Love was detained by Detective Middlebrooks who began asking Mr. Love why he was "'hanging out'" with Mr. Wright when "'[y]ou know he is a drug dealer,'" while Officer Baez stood nearby listening. Officer Baez acknowledged to the trial court that the officers had no reason to further detain Mr. Love once Mr. Wright was arrested and that, with respect to the conversation with Mr. Love, "Officer Middlebrooks was conducting an investigation * * * [and] [t]rying to get [Mr. Love] to talk[.]" We note that there was very little testimony adduced at the suppression hearing, and, based upon the limited record, we conclude that Mr. Love was impermissibly detained and questioned under circumstances where there was no reasonable articulable suspicion of criminal activity. Moreover, despite making a contrary argument below, the State essentially concedes on appeal that there was a continued detention of Mr. Love after the reason for the stop was completed. Our own review of the record leads us to conclude that a reasonable person would not have felt free to leave under the circumstances and, thus, Mr. Love was unlawfully seized while Detective Middlebrooks questioned him. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *Accord Robinette*, 80 Ohio St.3d at 243-244.

---

[2] Mr. Love also suggests that the initial stop of the vehicle was impermissible. However, we need not decide whether the officers' initial decision to stop the vehicle was permissible under the Fourth Amendment because, even assuming that it was, the officers impermissibly detained Mr. Love without reasonable articulable suspicion to do so.

**{¶11}** Nonetheless, the State argues that, even if Mr. Love was unlawfully seized, it met its burden to demonstrate that he freely consented to the search of his person and his vehicle. "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *Robinette* at paragraph three of the syllabus.

> "[A]n illegal arrest * * * bears uniquely on the question of voluntariness, for it constitutes a false claim of authority over the person in much the same way that reliance upon an illegal search warrant constitutes a false claim of authority over the premises named in the warrant." 4 Wayne R. LaFave, *Search and Seizure*, Section 8.2(d) (5th Ed.2012). The same may be said of an illegal investigatory detention.

*State v. Hawkins*, 2d Dist. Montgomery No. 25712, 2013-Ohio-5458, ¶ 15. Thus, "[t]he state has the burden to show, under the totality of the circumstances, that Defendant's consent to search [his] vehicle was a voluntary act of free will, as opposed to mere submission to an officer's superior position of authority, which is not sufficient to demonstrate a free and voluntary consent." *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, ¶ 29 (2d Dist.).

**{¶12}** As observed in *Delaware v. Prouse*, 440 U.S. 648 (1979), pulling a motorist over to the side of the road carries both a physical and psychological intrusion and may involve "an unsettling show of authority[,]" which, in addition to interfering with a citizen's freedom of movement, "may create substantial anxiety." *Id*. at 657. Mr. Love's eventual offer to search was in response to Detective Middlebrooks' show of authority during an unlawful detention wherein he was questioning Mr. Love about drugs or firearms, under circumstances where a reasonable person would not feel free to leave. The circumstances in this case are similar to *Robinette*, where the "consent" to search was borne of such a show of authority. *See Robinette* at 245 ("While [the officer's] questioning was not expressly coercive, the circumstances surrounding

the request to search made the questioning impliedly coercive."). Given the totality of the circumstances as reflected in the limited record before us, we cannot conclude that the State demonstrated that Mr. Love's "consent" was not the product of the illegal detention but, rather, the product of a voluntary act of free will. *Accord Id.* at paragraph three of the syllabus.

{¶13} Accordingly, Mr. Love's assignment of error is sustained.

### III.

{¶14} In light of the foregoing, the judgment of the Lorain County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

8

HENSAL, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶15}   I concur in judgment only based on the State's limited arguments.  Although there may have been other grounds justifying the decision by police to search Love, such as officer safety, the State did not make those arguments in the trial court or on appeal.

APPEARANCES:

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.