[Cite as *State v. Potts*, 2017-Ohio-8512.]

STATE OF OHIO      )             IN THE COURT OF APPEALS
                     )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA      )

STATE OF OHIO                           C.A. No.       17CA0033-M

     Appellant

     v.                                APPEAL FROM JUDGMENT
                                      ENTERED IN THE
MICHAEL C. BRAMLEY           COURT OF COMMON PLEAS
                                      COUNTY OF MEDINA, OHIO
     Appellee                       CASE No.      17CR0103

DECISION AND JOURNAL ENTRY

Dated: November 13, 2017

SCHAFER, Presiding Judge.

{¶1}   Appellant, the State of Ohio, appeals from the judgment of the Medina County Court of Common Pleas, granting Appellee, Michael Bramley's, motion to suppress. This Court reverses.

I.

{¶2}   While aiding the Drug Task Force, Officer Kelly Moran was asked to follow a truck that had just left a suspected drug house. The truck had two occupants: the driver and his passenger, Bramley. Because the truck had an excessively loud muffler, Officer Moran stopped it on that basis and took the driver's and Bramley's information. He relayed their information to the Drug Task Force and learned that the task force was familiar with both of them. As a result, he requested a canine unit.

{¶3}   A canine unit responded shortly thereafter. Though the canine expressed some interest in the truck, it did not positively alert. Accordingly, Officer Moran verbally warned the

driver about his muffler and told him and Bramley they were free to go. He then proceeded to ask the driver several questions, culminating in a request to search the truck. The driver agreed to the search, and Officer Moran had Bramley exit the truck. Before searching the truck, Officer Moran briefly spoke with Bramley and asked him to consent to a search of his person. Bramley agreed and, when Officer Moran conducted his search, he found crack cocaine in Bramley's pocket.

{¶4} A grand jury indicted Bramley on one count of felony possession. Bramley filed a motion to suppress, and the court scheduled the matter for a hearing. Following the hearing, the court granted Bramley's motion.

{¶5} The State now appeals from the court's suppression ruling and raises a single assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred in granting Appellee Bramley's motion to suppress evidence where the search at issue was conducted during a consensual encounter and with Appellee Bramley's voluntary consent. Even if this court were to find that the interaction in question was continued detention, there was sufficient reasonable suspicion to continue Bramley's detention past the traffic stop and search Bramley's person.**

{¶6} In its assignment of error, the State argues that the trial court erred when it granted Bramley's motion to suppress. The State argues that Bramley voluntarily consented to Officer Moran's search. In the alternative, the State argues that the officer had reasonable suspicion to conduct the search.

{¶7} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court assumes the role of trier of fact and is in the best position to evaluate witness credibility

and resolve factual issues. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. Accepting those facts as true, the appellate court then must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8} When an officer stops a vehicle for a violation of a traffic law, an investigatory stop occurs. *State v. Johnson*, 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11. In general, "[a]n investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, ¶ 8. *Accord Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 1614 (2015) ("Authority for the seizure [] ends when tasks tied to the traffic infraction are–or reasonably should have been– completed."). Yet, an officer may briefly extend a seizure to ask about the presence of illegal drugs or weapons. *State v. Robinette*, 80 Ohio St.3d 234, 241 (1997). Such an inquiry need not be based on reasonable suspicion because it serves "a legitimate public concern" that outweighs an individual's interest in resuming their normal activities. *Id.* If, when inquiring, "the officer ascertain[s] reasonably articulable facts giving rise to a suspicion of criminal activity," the officer may continue the detention and conduct "a more in-depth investigation * * *." *Id.* If facts giving rise to reasonable suspicion do not present themselves, however, "[a] continued detention to conduct a search constitutes an illegal seizure." *Id.* at paragraph one of the syllabus.

{¶9} Though an individual has been unlawfully detained, "[v]oluntary consent * * * may validate an otherwise illegal detention and search." *Robinette* at 241. "Whether consent was voluntarily given is a question of fact to be determined from the totality of the

circumstances, and the government bears the burden of showing that consent was 'freely and voluntarily' given by 'clear and positive' evidence." *State v. Cummings*, 9th Dist. Summit No. 20609, 2002 Ohio App. LEXIS 98, *7 (Jan. 16, 2002), citing *Robinette* at 243. Consent is an act of free will, not "a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983). If an individual consents while being unlawfully detained, "the totality of the circumstances must clearly demonstrate that a reasonable person would [have] believe[d] that he or she had the freedom to refuse to answer further questions and could in fact [have left]." *Robinette* at paragraph three of the syllabus. "[W]hile the [individual's] knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.'" *Id.* at 243, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 249 (1973).

{¶10} The trial court made each of the following factual findings. Officer Kelly Moran was assisting the Drug Task Force when they asked him to follow a truck that was leaving a suspected drug house. Officer Moran located the truck, noted that it had an excessively loud muffler, and initiated a stop on that basis. Before approaching the truck, he saw the front seat passenger make furtive movements in the direction of the center console. He then approached and obtained the name of both the driver and the passenger, whom he identified as Bramley. Officer Moran relayed the driver's and Bramley's names to the Drug Task Force and learned that the task force was familiar with both individuals. Consequently, he asked the task force to send a canine.

{¶11} The canine handler led the canine around the truck. Though the canine was "interested in the truck," it did not positively alert. Accordingly, Officer Moran approached the truck, verbally warned the driver about his muffler, and told him he was free to go. Without

informing the occupants that the canine had failed to positively alert, the officer then asked the driver if there was a reason the canine was interested in his truck, if there was anything illegal in the truck, or if anyone had recently smoked marijuana in the truck. The driver answered no to each question, but Officer Moran nonetheless asked him for consent to search the truck. The driver "eventually gave [his consent] after initially refusing."

{¶12} Officer Moran first removed Bramley from the truck. He asked Bramley about the furtive movements he had observed, and Bramley admitted that he had hidden an open container between his seat and the center console. The officer then asked Bramley to consent to a search of his person, and Bramley agreed. Inside Bramley's pants pocket, Officer Moran found a baggie containing crack cocaine. He then handcuffed Bramley, placed him in his cruiser, and searched both the truck and the driver. Officer Moran estimated that 20 minutes elapsed between his initial traffic stop and Bramley's arrest.

{¶13} The trial court determined that Officer Moran lacked a constitutional basis to detain Bramley once the canine failed to positively alert and he verbally warned the driver about his muffler. The court concluded that, at that point, the violation giving rise to the traffic stop had been addressed and Officer Moran lacked reasonable suspicion to support a continued detention. Though Officer Moran told Bramley and the driver they were free to leave, the court determined that the additional questions he asked immediately thereafter gave rise to an illegal detention. The court wrote that "the specific wording of [the] questions implied, and would lead a reasonable person to believe based on the totality of the circumstances, that the [canine] had in fact alerted on the truck." The court further concluded that the consent Bramley gave for a search of his person was involuntary. The court elaborated: "The overhead lights on Officer Moran's police cruiser were still activated, and by this time, there were multiple other police

cruisers at the scene of the traffic stop." Because "[a] reasonable person in Bramley's position would not [have] believe[d] he had the freedom to refuse to answer questions and could in fact [have left]," the court granted his motion to suppress.

{¶14} The State argues that Officer Moran did not illegally detain Bramley and that Bramley voluntarily consented to a search of his person. The State notes that Officer Moran told Bramley and the driver they were free to go. It further notes that Officer Moran was the only officer speaking with them and never threatened them, physically touched them, or displayed his weapon. According to the State, a reasonable person in Bramley's position would have felt free to refuse to answer further questions or leave. Consequently, the State argues that his consent was a product of free will rather than compulsion. Alternatively, it argues that Officer Moran's search of Bramley was supported by reasonable suspicion.

{¶15} Upon review, one of the trial court's factual findings is not supported by competent, credible evidence. *See Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100. Contrary to the court's finding, there was no testimony that "there were multiple other police cruisers at the scene of the traffic stop" when Officer Moran asked Bramley for consent to search his person. Though the canine unit clearly had arrived on scene sometime before the search, no one testified that the canine unit remained on scene once the canine completed its sweep of the truck. Officer Moran was the only witness to testify at the suppression hearing, and he was never asked about the presence of other officers. Consequently, the evidence does not support the trial court's finding on that point, and this Court need not accept it. *See, e.g., State v. McLemore*, 9th Dist. Lorain No. 13CA010435, 2014-Ohio-2116, ¶ 25. Because the record reflects that the trial court's remaining factual findings are based on competent, credible

evidence, this Court applies the law strictly to those findings. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

**{¶16}** Upon review, the record supports the trial court's conclusion that Officer Moran illegally detained Bramley and the driver of the truck. The officer acknowledged that he stopped the truck due to an excessively loud muffler and that the canine he called to the scene sniffed the truck and did not alert. At that point, the officer issued the driver a verbal warning for his muffler and informed him that he was free to leave. Officer Moran acknowledged that, had the driver refused to engage with him further, he would have allowed him to leave. Thus, the record evinces that he had accomplished the initial goal of his investigatory stop before he began asking more questions. *See Rackow*, 2008-Ohio-507, at ¶ 8. *See also Rodriguez*, 135 S.Ct. at 1614.

**{¶17}** Though Officer Moran could briefly extend his seizure to ask the driver questions about the presence of contraband, *see Robinette*, 80 Ohio St.3d at 241, none of the driver's answers gave rise to reasonable suspicion to search the truck. The driver answered no to each of the officer's questions, and Officer Moran did not testify that he made any additional observations during that time that aroused his suspicions. Thus, he "did not have any reasonably articulable facts or individualized suspicion to justify [the driver's] further detention in order to ask to search his truck," and, when he asked to search the truck, the continued detention became unlawful. *Robinette* at 241. *See also State v. Scarberry*, 10th Dist. Franklin No. 15AP-775, 2016-Ohio-7065, ¶ 39-41; *Rackow* at ¶ 15. Because Bramley was a passenger in the truck, his freedom of movement was "equally affected" at that point, and thus, Bramley too became the subject of an illegal detention. *State v. Redding*, 9th Dist. Medina No. 10CA0018-M, 2010-Ohio-4286, ¶ 9, quoting *State v. Carter*, 69 Ohio St.3d 57, 63 (1994). The remaining question is whether, despite the unlawful detention, Bramley voluntarily consented to a search of his person.

{¶18} As noted, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *Robinette* at 241. Because Officer Moran obtained Bramley's consent to search while he was unlawfully detained, it was the State's burden to show that a reasonable person in his position would have felt he "had the freedom to refuse to answer further questions and could in fact [have left]." *Id.* at paragraph three of the syllabus. The trial court concluded that a reasonable person in Bramley's position would not have felt free to leave because (1) the specific wording of Officer Moran's questions to the driver implied that the canine had alerted on the truck, (2) the officer's overhead lights were activated, and (3) there were multiple other police cruisers on scene. The court's analysis is problematic for at least two reasons.

{¶19} The first reason the court's analysis is problematic is that one of the circumstances on which it relied lacks a foundation in the record. As previously noted, there was no evidence that multiple police officers or cruisers were present when Bramley consented to a search of his person. No one asked Officer Moran that question, and he was the only witness to testify at the suppression hearing. Because there was no proof that additional officers were present, the trial court should not have relied on that fact in considering the totality of the circumstances.

{¶20} The second reason that the court's analysis is problematic is that it focused extensively on the conversation Officer Moran had with the driver of the truck. The court went into specific detail about the exact wording of the questions Officer Moran posed to the driver and whether he made it appear as if the canine had alerted on the truck. Yet, the issue was whether Bramley voluntarily consented *to a search of his person*, not whether the driver voluntarily consented *to a search of his truck*. Officer Moran testified that he asked Bramley to

exit the truck after the driver agreed to let him search it. Before conducting any search, Officer Moran asked Bramley about the furtive movements he had seen him make. Bramley then admitted to having stashed an open container in the truck. At that point, Officer Moran asked Bramley to consent to a search of his person, and Bramley agreed. There was no testimony that he hesitated or answered equivocally. Indeed, Officer Moran described Bramley as "very cooperative."

{¶21} In *State v. Starks*, an officer conducted a random license plate check and stopped a car in which Starks was a passenger. *State v. Starks*, 9th Dist. Summit No. 27347, 2015-Ohio-2137, ¶ 9. The officer collected the driver's and Starks' information and, while he was verifying their identities, a second officer arrived on scene. *Id.* The first officer ultimately discovered that the driver had an outstanding warrant, so the driver was arrested and placed in a cruiser. *Id.* Because Starks did not have a valid license, a decision was made to tow the car. *Id.* at ¶ 10. Starks exited the car so that the officers could conduct an inventory search. *Id.* Before the inventory search occurred, however, one of the officers asked Starks if he had anything illegal on his person. *Id.* When Starks said no, the officer asked if he could search Starks' person, and Starks agreed. *Id.* The officer found drugs inside Starks' pockets. *Id.* Starks later claimed that his consent was involuntary, but this Court concluded otherwise. *Id.* at ¶ 12. We noted that the officer who asked for Starks' consent did so in a non-threatening way and there was no evidence that either officer on scene drew a weapon or made an unlawful showing of authority. *Id.* at ¶ 12. Consequently, this Court concluded that Starks voluntarily consented to a search of his person. *Id.*

{¶22} Although the consent in *Starks* arose in the context of a lawful detention rather than an unlawful one, this Court finds the case instructive. As in *Starks*, Bramley had to exit the

vehicle in which he was a passenger because the police intended to search the vehicle. *See id.* at ¶ 10. As in *Starks*, Bramley was briefly asked about illegal contraband before agreeing to submit to a search. *See id.* As in *Starks*, there was no testimony that the officer requesting consent had a threatening demeanor, displayed a weapon, or made an unlawful showing of authority. *See id.* at ¶ 12. The testimony was simply that Officer Moran asked for Bramley's consent and Bramley was "very cooperative" and agreed. Moreover, not long before the search occurred, Officer Moran had expressly told Bramley's driver he was free to leave. There was no indication in *Starks* that officers ever told the defendant he was free to leave. Further, at the point Starks consented, his driver had already been formally arrested and a decision had already been made to tow the driver's car. *Id.* at ¶ 9-10. This Court found the defendant's consent to be voluntary in spite of the presence of those additional factors, neither of which is present here. *Id.* at ¶ 12.

{¶23} Having reviewed the record, this Court must conclude that a reasonable person in Bramley's position would have felt he "had the freedom to refuse to answer further questions and could in fact [have left]." *Robinette*, 80 Ohio St.3d 234 at paragraph three of the syllabus. Even assuming that Officer Moran's questioning made it appear to the driver that he was not free to leave, all of his questions were directed at the driver and pertained to his truck. Officer Moran did not ask Bramley any questions at that time, and he had already told Bramley's driver that he was free to leave. *See, e.g., State v. Davis*, 4th Dist. Athens No. 15CA26, 2016-Ohio-3539, ¶ 48. There was no evidence that there were multiple officers on scene and, at the point Officer Moran asked Bramley to submit to a search, he had not even attempted to search the driver. Bramley, therefore, could not have reasonably assumed that he was obligated to submit to a search of his person. *Compare State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 11. Moreover, there was no evidence that the wording of Officer Moran's request was impliedly

coercive or made consent appear mandatory. *See Davis* at ¶ 48. *Compare State v. Love*, 9th Dist. Lorain No. 13CA010388, 2015-Ohio-142, ¶ 10-12. Officer Moran did not testify to that effect, and Bramley opted not to testify. Accordingly, upon review, the record supports the conclusion that Bramley's decision to consent to a search of his person was an act of free will rather than "a mere submission to a claim of lawful authority." *Royer*, 460 U.S. at 497. The trial court, therefore, erred when it granted his motion to suppress. The State's sole assignment of error is sustained.

### III.

{¶24} The State's sole assignment of error is sustained. The judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellant.

LEE POTTS, Attorney at Law, for Appellee.