[Cite as *State v. King*, 2020-Ohio-1312.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

DEBRA J. KING

    Appellant

C.A. No.    19CA0042-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    18CR0911

DECISION AND JOURNAL ENTRY

Dated: April 6, 2020

CARR, Presiding Judge.

{¶1} Defendant-Appellant Debra King appeals from the judgment of the Medina County Court of Common Pleas. This Court reverses.

I.

{¶2} On June 28, 2018, the vehicle King was a passenger in was stopped for following other vehicles too closely. The officer who initiated the traffic stop, Officer Ryan Gibbons, was a canine handler who, through his employment with the Montville Police Department, was assigned to the Medina County Drug Task Force. Officer Gibbons made contact with the three occupants of the vehicle: the driver, the back seat passenger, and King, the front seat passenger. Officer Gibbons noticed several knives and flashlights throughout the vehicle. Based on his training and experience, he associated those items with methamphetamine use. Officer Gibbons additionally noted that King was laughing nervously and seemed to be trying to direct the conversation away from illegal activity. The driver was observed to be staring straight ahead while Officer Gibbons

was trying to speak with him, which Officer Gibbons found to be abnormal and correlated with illegal activity.

{¶3} Officer Gibbons then asked the driver to exit the vehicle and go the rear of the vehicle. Officer Gibbons asked if the driver had any weapons and the driver answered that he did not. Officer Gibbons then asked if the driver would mind sitting in the front seat of the police cruiser. The driver indicated he did not mind and got into the police car. While Officer Gibbons was gathering information, he requested that Agent Michael Barnhardt with the Medina County Drug Task Force come to the scene to walk Agent Barnhardt's canine around the vehicle. Agent Barnhardt walked his canine around the vehicle and it did not alert. Agent Barnhardt relayed this information to Officer Gibbons.

{¶4} Officer Gibbons completed the written warning, told the driver that he was just giving the driver a warning, and handed the driver back his documents. Officer Gibbons then asked the driver if he minded if Officer Gibbons walked his canine around the vehicle. The driver stated that officers already had, and Officer Gibbons responded that that was Agent Barnhardt's dog. That dog showed interest and Officer Gibbons wanted to use his dog. The driver responded that he did not care. Officer Gibbons walked his canine around the vehicle and it alerted to the presence of illegal narcotics.

{¶5} A search was then conducted of the vehicle. A vial of methamphetamine was located in King's purse, and two pipes that contained methamphetamine were found in the vehicle. One was in a bandana that was identified as the driver's and one was in a sock that matched socks that King was wearing.

{¶6} Based upon the traffic stop, King was indicted on one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a). King filed a motion to suppress,

which was denied following a hearing. King thereafter pleaded no contest and was sentenced accordingly.

{¶7}   King has appealed, raising a single assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING KING'S MOTION TO SUPPRESS ALL THE EVIDENCE OBTAINED AS RESULT OF VIOLATION OF KING'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶8}   King argues that the trial court erred in denying her motion to suppress. Specifically, she maintains that, after the driver was given a warning, they were unlawfully detained and the driver's consent to the canine sniff was not voluntary.

{¶9}   A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶10}   "When an officer stops a vehicle for a violation of a traffic law, an investigatory stop occurs." *State v. Bramley*, 9th Dist. Medina No. 17CA0033-M, 2017-Ohio-8512, ¶ 8. "Once an officer executes an investigative stop, it generally 'may last no longer than necessary to

accomplish the initial goal of the stop.'" *State v. Alexander*, 9th Dist. Medina No. 18CA0066-M, 2019-Ohio-3310, ¶ 9, quoting *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, 2008 WL 351455, ¶ 8 and citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." (Internal quotations and citations omitted.) *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 16.

{¶11} "[T]he use of a well-trained narcotics-detection dog - one that does not expose noncontraband items that otherwise would remain hidden from public view, during a lawful traffic stop, generally does not implicate legitimate privacy interests." (Internal quotations and citations omitted.) *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 8. Accordingly, "[i]f a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop, a law enforcement official may simultaneously conduct a K–9 sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity." *Id.*

> Yet, an officer may briefly extend a seizure to ask about the presence of illegal drugs or weapons. *State v. Robinette*, 80 Ohio St.3d 234, 241 (1997). Such an inquiry need not be based on reasonable suspicion because it serves "a legitimate public concern" that outweighs an individual's interest in resuming their normal activities. *Id.* If, when inquiring, "the officer ascertain[s] reasonably articulable facts giving rise to a suspicion of criminal activity," the officer may continue the detention and conduct "a more in-depth investigation * * *." *Id.* If facts giving rise to reasonable suspicion do not present themselves, however, "[a] continued detention to conduct a search constitutes an illegal seizure." *Id.* at paragraph one of the syllabus.

*Bramley* at ¶ 8.

{¶12} If an individual has been unlawfully detained, "[v]oluntary consent * * * may validate an otherwise illegal detention and search." (Internal quotations and citation omitted.) *Id.*

at ¶ 9. "If an individual consents while being unlawfully detained, the totality of the circumstances must clearly demonstrate that a reasonable person would [have] believe[d] that he or she had the freedom to refuse to answer further questions and could in fact [have left]." (Internal quotations and citations omitted.) *Id.* "Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances, and the government bears the burden of showing that consent was freely and voluntarily given by clear and positive evidence. Consent is an act of free will, not a mere submission to a claim of lawful authority." (Internal quotations and citations omitted.) *Id.*

{¶13}  Here, at the time that Officer Gibbons gave the driver a warning and returned his documents, Officer Gibbons did not possess reasonable, articulable suspicion to continue to detain the driver and the passengers. The State argues that Officer Gibbons obtained additional facts suggestive of drug activity during the traffic stop entitling him to prolong the stop to allow for the second dog to walk around the vehicle. However, these observations identified by the State occurred prior to when the first dog walked around the vehicle and failed to alert. Thus, any reasonable, articulable suspicion of drug activity would have been eliminated when the first dog failed to alert. The State attempts to argue that the first dog exhibited a change in behavior when examining the vehicle and this provided a basis for reasonable suspicion. Notably, the trial court did not include such a finding in its finding of facts. Additionally, when Agent Barnhardt, the handler of the canine at issue, was asked about the significance of the dog's change in behavior, Agent Barnhardt testified that there was "[n]o significance" to the dog's change in behavior.

{¶14}  While Officer Gibbons was permitted to "briefly extend his seizure to ask the driver questions about the presence of contraband," *Bramley*, 2017-Ohio-8512, ¶ 17, we cannot agree that that also meant that Officer Gibbons could further detain the driver and passengers to ask the

driver to consent to having another canine walk around the vehicle. *See Robinette*, 80 Ohio St.3d at 241; *see also Fry*, 2007-Ohio-3240, at ¶ 16. Although a canine sniff of a vehicle is not a search, *see State v. Bryner*, 9th Dist. Lorain No. 18CA011257, 2018-Ohio-3215, ¶ 15, Officer Gibbons' request for a second canine sniff nevertheless prolonged the detention of the driver and passengers, after the lawful basis for the stop had ended.

{¶15} Accordingly, the State bore the burden of demonstrating by clear and positive evidence that the driver's consent to prolong the stop was freely and voluntarily given. *See Bramley* at ¶ 9. "[T]he totality of the circumstances must clearly demonstrate that a reasonable person would [have] believe[d] that he or she had the freedom to refuse to answer further questions and could in fact [have left]." *Id.*

{¶16} The trial court concluded that the driver consented to prolong the stop and allow the second dog sniff. In so doing, the trial court concluded that the driver's testimony that he did not consent was not credible. However, in reviewing the testimony, the driver was never asked whether he consented to prolong the stop, only whether he consented to a second canine sniff. Nonetheless, Officer Gibbons did testify that the driver consented. He testified that Officer Gibbons asked the driver if the driver would mind if Officer Gibbons ran his dog around the vehicle. The driver responded, "Well, you just ran his dog[.]" Officer Gibbons told the driver that the other dog indicated an interest and Officer Gibbons would like to try his dog. The driver then stated, "I don't care[.]" There is no dispute that, during the questioning, the driver was not handcuffed or threatened, but nonetheless, the driver was seated in the police car. Officer Gibbons then got out his dog and conducted a second sniff, during which his dog alerted. At this point, the driver also exited Officer Gibbons' vehicle.

{¶17} According to the driver, after Officer Gibbons issued a warning, Officer Gibbons began questioning the driver about whether he had anything illegal on him or in his car. The driver responded that he did not. Officer Gibbons also asked the driver if King had anything illegal and the driver responded that he did not think so. Officer Gibbons then asked to walk his dog around the vehicle. The driver was surprised by the request and did not think he could refuse. The driver indicated that there were still multiple officers on the scene, which appears to be corroborated by Officer Gibbons' own testimony who indicated that, following the alert by his own dog, he placed King in one police car, the back seat passenger in another, and the driver in Officer Gibbons' car.

{¶18} It is not clear if the trial court discounted all of the driver's testimony based upon credibility determinations. However, even assuming it did, we still cannot say that the State demonstrated that the driver's consent was freely and voluntarily given. In concluding that the driver freely and voluntarily consented to the second canine sniff, the trial court pointed out that the driver was not threatened and Officer Gibbons did not draw his weapon or engage in otherwise coercive behavior. Notwithstanding the foregoing, at the time Officer Gibbons asked for consent, the driver was still sitting in the front seat of Officer Gibbons' police car and the testimony indicates that multiple police cars were present on the scene. Further, nothing in the testimony suggests there was any break in the conversation between the time Officer Gibbons issued the warning and when he continued to question the driver. *See Robinette,* 80 Ohio St.3d at 244. The Supreme Court has noted that, "[t]he undetectability of that transition [in conversation] may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow." (Internal quotations and citation omitted.) *Id.* Given the circumstances before us, we conclude that any reasonable person would not have felt free to leave and would have felt compelled to submit to Officer Gibbons'

questions. *See id.* at 244-245. "From the totality of the circumstances, it appears that [the driver] merely submitted to a claim of lawful authority rather than consenting as a voluntary act of free will." (Internal quotations and citations omitted.) *Id.* at 245. Thus, the State failed to demonstrate that the driver's consent was free and voluntary. *See id.*

{¶19} Therefore, we conclude that the trial court erred in denying the motion to suppress. King's assignment of error is sustained.

### III.

{¶20} King's assignment of error is sustained. The judgment of the Medina County Court of Common Pleas is reversed.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.